## In the matter of the Appeal from the Probate of the Will of Alfred Foster.

*Evidence: Wills: Photographic copies.* While it might not be error to permit photographic copies of a will which was in controversy to be given to a jury, with such precautions as to secure their identity and correctness, yet their use can never be compulsory, and their rejection cannot be urged as error.

*Contested will: Taking document to jury room.* The refusal to require the original will to be taken to the jury room, when the jury had not desired it, and against the objection of one of the parties, is held not contrary to law or good practice.

*Wills: Forgery: Comparison of handwriting: Jury room.* Where the genuineness of a document is in dispute, it would be hazardous to permit the jury to take the instrument to their jury room, for the purpose of a comparison of the handwriting of the body of it with that of the signature, to aid them in determining whether it was a forgery.

*Forgery: Opinions: Evidence: Jury-room inquest: Experts.* Where the question is one to be determined mainly upon opinions belonging somewhat to the domain of expert evidence, like that of handwriting, it is not admissible to leave the matter to be settled by a jury-room inquest and inspection, in which the opinions of fellow jurymen, who may not be qualified to give an opinion at all, and whose qualifications are not investigated, may stand for more than the sworn testimony of the most careful and skillful expert.

*Evidence: Handwriting: Comparison: Papers not in the cause.* The rule confining the use of papers for the purpose of comparison of handwriting to such as belong in the cause, which was established for this state by *Vinton v. Peck, 14 Mich., 287,* is re-affirmed; the fact that an English statute since that decision allows the reception of such documents as are satisfactory to the court, does not destroy the force of the reasons for the rule before prevailing.

*Heard April 11. Decided April 18.*

Error to Oakland Circuit.

*A. C. Baldwin* and *G. V. N. Lothrop,* for plaintiffs in error (contestants and appellants), on the subject of the admissibility of photographic copies, cited: *Frank v. Chemical Bank, 37 Sup. Court (N. Y.), 26 ;* and that the refusal to require the original will to be taken to the jury room was error: *Howland v. Willets, 5 Sandford, 219 ; S. C., 5 Seld., 174 ; Porter v. Mount, 45 Barb., 428 ;* at the least it was discretionary to permit it, and the court exercised no discretion, but based

his refusal on a want of power except by consent of both parties ; see *Hackley v. Hastey, 3 Johns., 252; Graham & Waterman on New Trials, 76; Hilliard on New Trials, 174–6;* and on the subject of the admissibility of undisputed signatures to documents not belonging to the cause, for the purpose of comparison of handwriting: *Vinton v. Peck, 14 Mich., 287; Doe v. Newton, 5 Ad. & El., 514; State v. Ward, 39 Vt., 225; Richardson v. Newcomb, 21 Pick., 315; Chandler v. Lebanon, 45 Me., 536; Lyon v. Lyman, 9 Conn., 55; Adams v. Field, 21 Vt., 256; Myers v. Tocsin, 3 N. H., 47; Bowman v. Sanborn, 28 N. H., 97; Guffey v. Deeds, 29 Penn. St., 378; Travis v. Brown, 43 Penn., 17; Robertson v. Miller, 1 McMullen, 120; Baker v. Mygatt, 14 Iowa, 131.*

*M. E. Crofoot,* for defendant in error (proponent), to the point that the original will being produced and being the best evidence, the introduction of the photographic copies, which are to be regarded as secondary evidence, is not competent, cited: *1 Greenl. on Ev.,* p. 97, § 82, p. 197, § 116, and cases cited; *People v. Lambert, 5 Mich., 360; Moulton v. Mason, 21 Mich., 364; Com. v. Eastman, 1 Cush., 189; Taylor Will Case, 10 Abb., Pr., N. S., 301; Tome v. Parkersburgh R. R., 39 Md., 36;* and on the subject of admitting papers not belonging in the cause, for the purpose of a comparison of signatures: *Bromage v. Rice, 7 C. & P., 548; Waddington v. Cousins, Ib., 595; Doe v. Newton, 5 Ad. & El., 514; Hughes v. Rogers, 8 M. & W., 123; Griffits v. Ivery, 11 Ad. & El., 323; The Fitzwalter Peerage, 10 Cl. & Fin., 193; Van Wyck v. McIntosh, 14 N. Y., 442; Dubois v. Baker, 30 N. Y., 355; Randolph v. Laughton, 48 N. Y., 456; Morey v. Safe Dep. Co., 2 J. & Sp., 154; Merchant's Will Case, 1 Tuck., 151; Hazelton v. Union Bank, 32 Wis., 34; Clark v. Rhodes, 2 Heisk. (Tenn.), 206; Vinton v. Peck, 14 Mich., 287;*

*Van Syckle v. People, 29 Mich., 65; Medway v. U. S., 6 Court of Cl., 421; Moore v. U. S., 13 Alb. L. J., 63;* and on the subject of the jury taking to their room, without consent of parties, papers introduced in evidence: *Findley v. People, 1 Mich., 237.*

CAMPBELL, J:

Upon the appellate probate proceedings in the circuit court of Oakland county, certain rulings were made on the trial which are brought up by writ of error on the bill of exceptions. All relate to questions connected with the evidence used on the hearing.

The propounders of the will proved its execution by the two subscribing witnesses, whose testimony was direct and positive to all the requisites of a valid will.

Upon opening their proofs, the contestants proposed to furnish the jury with photographic copies of the will, which the court declined to permit.

A witness named Toms, who was called to testify concerning Foster's handwriting, having produced a note and mortgage which he asserted to have been signed by Foster, the court refused, upon application, to allow these papers to be used before the jury for purposes of comparison.

A second application was refused, which proposed to give the jury photographic copies for purposes of comparison.

Permission to have the jury take the original will to their room to compare its body with the signature was also refused, no application having been made by the jury, and the opposite counsel not assenting unless the jury desired to see it.

These were the bases of the assignments of error.

If the court had permitted photographic copies of the will to be given to the jury, with such precautions as to secure their identity and correctness, it might not perhaps have been error. Nevertheless it is not always true that every photographic copy would be safe on any inquiry requir_

ing minute accuracy. Few copies can be so satisfactory as a good photograph, but all artists are not competent to make such pictures on a large scale, and all photographs are not absolutely faithful resemblances. It is quite possible to tamper with them, and an impression which is at all blurred would be very apt to mislead on questions of handwriting where forgery is claimed. Whether it would or would not be permissible to allow such documents to be used, their use can never be compulsory. The original, and not the copy, is what the jury must act upon, and no device can be properly allowed to supersede it. Copies of any kind are merely secondary evidence, and in this case they were intended to be used as equivalent to primary evidence in determining the genuineness of the primary document. That, and that only, was in controversy, and was in court to be shown to the jury. However fortunate it may be that copies can now be produced which will closely resemble originals, it would be an unauthorized assumption to hold that courts should be compelled to receive additional and supplementary proofs, which were neither necessary nor admissible before, and which are at best merely convenient aids to enable juries to dispense with the use of the primary evidence. Their rejection left the only paper before the jury with which they were at all concerned, and it was not error. The same remark will apply concerning the use of such copies during the examination of witnesses and the argument of counsel.

The refusal to require the original will to be taken to the jury room, when the jury had not desired it, was not contrary to law or practice. It has even been questioned whether it could properly be allowed at all, but this seems to be rather disfavored than absolutely erroneous. Much may be said on both sides of such a question. But the purpose avowed in this cause, of having the jury use the document to look for resemblances between the body and the signature for the purpose of inferring forgery, indicates some danger in permitting it. When a juror is to give

testimony he must do it in open court.     Yet practically this jury-room .inquest would involve the expressions of opinions belonging somewhat to the domain of expert evidence, and having the force of facts, when if it were assumed the jury was competent to settle such matters by their own skill it might not be competent to examine witnesses upon it at all.     Nothing can be more dangerous than to allow the suspicions and surmises of men whose opinions could not often be received as witnesses, to fix the rights of parties by their fanciful notions of resemblances or differences.     In this country most jurors are not illiterate, but it would be very strange if the average members of juries could be regarded as qualified to form safe opinions on an inspection of papers upon nice points of identity in handwriting, especially when the whole case may depend upon their correctness.     Juries can undoubtedly, and must, use their judgment more or less concerning documents laid before them, and have it in their power to rely on their own views very much if they see fit.     But the law presumes they will act on testimony chiefly, if not entirely, and it would not be proper to assume that they all have equal knowledge or skill in such inquiries, or that when they consult together the opinions of one would not have more influence than those of another, when the opinions operate as facts in the cause. If a verdict were formed on statements of ordinary facts by one juror to his fellows, it would be a violation of their oaths. When opinions are such as to stand in the same light, the result cannot be much less dangerous.

No harm can usually result from the possession of documents in the jury room, because they seldom call for examinations of their genuineness, and are usually only important for their contents.     When their genuineness is in controversy, and that is to be judged by resemblances and peculiarities on which witnesses have been examined as experts, their inspection alone may become one of the means of evidence requiring skill to deduce its results.

Every one knows how very unsafe it is to rely upon any

one's opinions concerning the niceties of penmanship. The introduction of professional experts has only added to the mischief, instead of palliating it, and the results of litigation have shown that these are often the merest pretenders to knowledge, whose notions are pure speculation. Opinions are necessarily received, and may be valuable, but at best this kind of testimony is a necessary evil. Those who have had personal acquaintance with the handwriting of a person are not always reliable in their views, and single signatures, apart from some known surroundings, are not always recognized by the one who made them. Every degree of removal beyond personal knowledge, into the domain of what is sometimes called with great liberality scientific opinion, is a step towards greater uncertainty, and the science which is so generally diffused is of very moderate value. Subject to cross-examination it may be reduced to the minimum of danger. In a jury-room, without any check or corrective, it would be very dangerous indeed.

The question of allowing papers not otherwise in the case to be received and proved for purposes of comparison, was disposed of in *Vinton v. Peck, 14 Mich. R., 287,* and we have seen no reason to change our opinion. In the cases of the *Tracy and Fitzwalter Peerages,* in *10 Clark & Finnelly, 154 and 193,* this subject was discussed somewhat, and the danger of allowing testimony of handwriting from studies made expressly for the occasion was forcibly expressed. Mr. Best regards it as absolutely incompetent, and it has been so regarded in some instances by the courts.—*Best on Evidence, 236.* The \**Stirling Peerage Case* was a remarkable illustration of its quality. Such testimony is usually not only obtained for the occasion, but obtained under bias. It was held in *Vinton v. Peck,* that such testimony might be based on papers in the cause, although its value may not be very great. But

---

\* A very good report of this remarkable case was published in Blackwood's Magazine, under the title of the "Romance of Forgery," and was afterwards included by the author (Samuel Warren, LL. D.) in his collected "Miscellanies." It is also reported in Townsend's Modern State Trials.

when to the danger of hasty and perhaps biased opinions is added the disputed genuineness of papers produced, and the difficulty of producing all that might be of use for comparison on both sides, we cannot but think the risk is too great to justify the reception of such means of proof.

The fact that an English statute has allowed the reception of documents satisfactory to the court, is not an argument to which we can yield our own judgment. Some of the ablest judges in England, who were not in the least backward in legal reform, have always regarded the old rule as rather over-liberal than over-strict. What influences may have induced parliament to change the rule we do not know, but it certainly was not the opinion of those judges whose views have been most respected.

We think there is no error in the record, and the judgment must be affirmed, with costs.

The other Justices concurred.