GILBERT B. SHAW *et al.*

*v.*

THE LADY ENSLEY COAL, IRON AND RAILROAD COMPANY.

*Filed at Ottawa October 26, 1893.*

1. VENDOR AND VENDEE —*stoppage in transitu.* The stoppage of goods *in transitu* does not operate to rescind the contract of sale, and hence it does not divest the vendee of his title. The stoppage only has the effect of restoring the vendor to his right to a lien, as though he had never parted with the possession. But he can not keep the goods, and at the same time recover from the vendee the purchase price.

2. The first duty of the vendor after regaining possession is to hold the goods until the purchase price becomes due under the contract of sale, so as to be able to deliver them upon payment. After that he may sell them, and recover the difference between the amount received at the sale and the contract price; or he can sue the vendee for the whole price, if he is ready to deliver them upon payment.

3. If, however, after the contract price becomes due the vendor takes no steps to dispose of the goods, either by selling them after notice, or tendering them to the vendee, and, upon his failure to pay, suing him · for the price, but simply keeps them, he will, after a reasonable time, be held to have elected to take them back in satisfaction of the debt created by their purchase. But he can not keep them indefinitely, and at the same time recover the price.

4. Where a vendor stops part of the goods *in transitu,* and the vendee makes an assignment for the benefit of creditors, the vendor will not be allowed to prove up his entire claim, when he does not offer to deliver the goods so stopped, but he will be entitled to recover the price for the goods actually delivered.

5. If the vendor is not ready and willing to deliver the goods upon payment of the price, he can not recover the price, notwithstanding the insolvency of the vendee. Failing to show such readiness to deliver if the price was paid, raises a presumption that the vendor looks to the property for payment.

6. SALE—*re-sale of goods after earnest given.* After earnest given, the vendor can not sell the goods to another without a default in the vendee, and, therefore, if the vendee does not come and pay and take away the goods, the vendor ought to go and request him, and then if he does not come and pay and take away the goods in convenient time, the agreement is dissolved, and the vendor is at liberty to sell them to any other person. This does not mean that thereby the contract of sale is rescinded, but that it is determined, if the vendor so elects to treat it.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. FRANK SCALES, Judge, presiding.

Messrs. MORAN, KRAUS & MAYER, for the appellants:

Stoppage *in transitu* is the right which arises to an unpaid vendor to resume the possession with which he has parted, of goods he has sold on credit, before they come into the possession of the vendee, who has become insolvent or pecuniarily embarrassed. 2 Am. & Eng. Ency. of Law, 855; Anderson's

Law Dic. 978; Tiedeman on Sales, sec. 125; Story on Bailments, (9th ed.) sec. 581; *Inslee* v. *Lane*, 57 N. H. 454; *Jones* v. *Earl*, 37 Cal. 630; *Hause* v. *Judson*, 4 Dana, 7; 2 Kent's Com. \*540; *O'Brien* v. *Norris*, 16 Md. 122; *Loeb* v. *Peters*, 63 Ala. 243; *Chandler* v. *Fulton*, 10 Texas, 2.

The exercise of the right of stoppage is merely the exercise of a "right to resume a lien lost by parting with the actual possession of the goods." Benjamin on Sales, sec. 867; Story on Sales, sec. 320; 2 Kent's Com. \*541; *Jordan* v. *James*, 5 Ohio, 88; *Patten's Appeal*, 45 Pa. St. 151; *Newhall* v. *Vargús*, 15 Me. 314; Newmark's Law of Sales, sec. 411.

It is a right to resume, not the property in the goods, but the possession, which is necessary to support the vendor's lien. The property is recognized as being irrevocably in the purchaser when the right is exercised, for, as was said in *Bolton* v. *Lancashire Co.* L. R. 1 C. P. 439: "Unless the property passed there would be no need of the right of stopping *in transitu*." See, to the same effect, *Fraser* v. *Witt*, L. R. 7 Eq. 64; *Reynolds* v. *Railroad Co.* 43 N. H. 580; *Dickman* v. *Williams*, 50 Miss. 500.

The contract of sale is "not rescinded by the stoppage. It simply restores the vendor to his lien, and places him in the same position as if he had never parted with the possession." Fully supporting that doctrine are the following additional cases: *Newhall* v. *Vargas*, 13 Me. 93; *Rogers* v. *Thomas*, 20 Conn. 53; *Arnold* v. *Delano*, 58 Mass. 33; *Harris* v. *Pratt*, 17 N. Y. 249; Campbell on Sale of Goods, 490; 2 Benjamin on Sales, \*868.

To recapitulate: The presumption of law in the present case is, that the forty carloads of iron were sold for cash. Until possession of the property reached the vendee, the vendor parted neither with title nor possession. Even if the property had actually reached the actual possession of the vendee, the title would still remain in the vendor, and the sale would be conditional until the cash payment was made, or

the right thereto waived by the conduct of the vendor.　See authorities *supra*, and also *Allen* v. *Hartfield*, 76 Ill. 358; *Fishback* v. *Van Dusen*, 33 Minn. 111; Tiedeman on Sales, sec. 86; Boone on Law of Sales, 433; *Dole* v. *Kennedy*, 38 Ill. 282; *Martin* v. *Wirtz*, 11 Ill. App. 567.

We think that it will be found in every case where it has been held that the vendor, having exercised the right of stoppage *in transitu*, might sue for and recover the price of the goods, that the right to so recover has been accorded only upon a showing of his readiness and ability to deliver the goods upon payment of the purchase price.　1 Jones on Liens, sec. 862; 2 Kent's Com. 541; *Newhall* v. *Vargas*, 15 Me. 314.

Messrs. Willitts, Robbins & Case, for the appellee:

The effect of the stoppage *in transitu* was to restore the vendor's lien.　1 Jones on Liens, secs. 800, 807, 850, 852, 857, 861.

Appellee was not required to make tender of the goods. *Ex parte Chalmers*, L. R. 8 Ch. App. 289.

A creditor is entitled to prove his entire claim against an insolvent estate, without allowance for collateral securities held by him.　*In re Bates*, 118 Ill. 524; Jones on Pledges, sec. 587; *Patten's Appeal*, 45 Pa. St. 151.

Mr. Justice Wilkin delivered the opinion of the Court:

On the 8th day of August, 1891, the National Forge and Iron Company made a voluntary assignment under the provisions of our statute, making appellant Shaw its assignee. On the third of October, following, appellee filed a claim for the sum of $45,363.14, for "goods, wares and merchandise" sold by it to the insolvent assignor.　Exceptions to this claim were filed by the assignee and also by creditors, setting up, among other defenses, that a part of the goods charged for were never received.　The case was submitted to the county court of Cook county on the following stipulation:　"It is

34—147 Ill.

stipulated that the entire claim of the Lady Ensley Coal, Iron and Railroad Company against the National Forge and Iron Company is $45,148.08, which is the price at which certain iron was sold and consigned by the Lady Ensley Company to the National Forge and Iron Company. All of this iron was received by the consignee except forty carloads, of the value of $7961.50, which was stopped *in transitu* by the Lady Ensley Company, the claimant herein, and for a portion of which, namely, thirty-three carloads, a replevin suit was brought and the iron was taken on a writ, and at the trial the property was found to be in the plaintiff in the replevin suit. The only question litigated in that suit was as to whether the notice of stoppage *in transitu* was properly served, and whether the transit had ended until after the notice was served. The Lady Ensley Company claim the right to have the full amount of the claim existing at the time of the assignment, and the only question in dispute here is, whether it must reduce this claim by the value of the iron taken back under the notice of stoppage *in transitu*. The claim now under discussion was filed in these proceedings after the institution of the replevin suits, and after the property covered thereby had been returned to the claimant, and in both said replevin suits judgment has been rendered for the claimant,"—which was all the evidence offered or received upon the hearing of said cause. On July 9, 1893, the court sustained the exceptions as to $7961.50 of the claim, and allowed it for the balance, $37,186.58. On appeal the Appellate Court reversed that judgment and remanded the cause, with directions to allow the full amount claimed. From that judgment this appeal is prosecuted.

The question we are called upon to decide is, did the county court err in disallowing the claim to the extent of the value of the iron stopped *in transitu*. It was incumbent upon the claimant, on its appeal to the Appellate Court, to show that such error had been committed, in order to entitle it to a judg-

ment of reversal, and this, in our opinion, it failed to do. The stipulation upon which the case was submitted to the county court is very meagre and unsatisfactory. Conceding that it sufficiently shows such a sale as entitled the claimant to stop the forty carloads of iron, it fails to state other facts essential to a right to, at the same time, sue for and recover the price thereof. It is silent as to the disposition made of the iron after it was stopped, nor does it show when the contract price became due. It shows no more than that, before the claim was filed, claimant had regained possession of the property by the exercise of its right of stoppage *in transitu.* For anything appearing in the stipulation, the effect of a judgment allowing the full claim of $45,148.08 would be to allow the vendor to recover the value of property sold, and at the same time keep the property. True, the stoppage of goods *in transitu* does not operate to rescind the contract of sale, and hence does not divest the vendee of his title to the property. The stoppage only has the effect of restoring the vendor to his right to a lien, as though he had never parted with the possession. But we do not understand that he can keep the goods and at the same time recover from the vendee the purchase price.

There is a dearth of authority as to what steps the vendor should take to enforce his lien after stopping the goods, to be accounted for, no doubt, as was said in *Newhall* v. *Varges,* 15 Me. 314, "by supposing that the vendor usually obtaining all the goods sold finds he is fully paid, or if not, that the object of pursuing the insolvent vendee is not worth the trouble and expense." It is, however, well understood, that the first duty of the vendor after regaining possession, is to hold the goods until the purchase price becomes due under the contract of sale, so as to be able to deliver them upon payment. After that he may, upon notice to the vendee, sell them, and recover the difference between the amount received at the sale and the contract price, or he can sue the vendee for the whole price, "provided he is ready to deliver them upon payment." (2 Kent,

10th ed. 760.) If, however, after the contract price becomes due, he takes no steps whatever to dispose of the goods, either by selling them after notice, or tendering them to the vendee, and, upon his failure to pay, suing him for the price, but simply keeps them, we are unable to see why he should not, after a reasonable time, be held to have elected to take them back in satisfaction of the debt created by their purchase. Certainly he can not keep them indefinitely, and at the same time recover the price. In such case the rule announced in *Langfort* v. *Tiler*, 1 Salk. 113, quoted in *Newhall* v. *Varges, supra,* should be applied. It is there said: "After earnest given, vendor can not sell goods to another without a default in vendee, and, therefore, if vendee does not come and pay and take away the goods, the vendor ought to go and request him, and then if he does not come and pay and take away the goods in convenient time, the agreement is dissolved, and he is at liberty to sell them to any other person." True, as was said in the *Newhall case,* this does not mean that thereby the contract of sale is rescinded, but that it is determined, if the vendor elects to so treat it, and the election is shown, in the case supposed, by his non-action in regard to the property. At all events, we have been able to find no authority which authorizes the recovery of the full price, except upon the condition that the vendor has the property, and is ready and willing to deliver it upon payment of the price.

This we do not understand to be denied, but it is said the presumption is so strong in this case that the "insolvent estate is not prepared to go on performing its contracts, that it is enough if it does not appear but that the vendor is willing and ready to perform if demanded so to do." With this view we can not agree. In every case of stoppage *in transitu* the vendee is insolvent. It is that insolvency which gives the vendor the right of stoppage *in transitu,* and the presumption of inability to pay for and take the goods, which it is said takes this case out of the general rule, would take every other case out of it,

and the rule would amount to nothing. For anything shown in the agreed facts, the claimant has, and intends to keep, the forty carloads of iron for which it now seeks to recover; or, for anything here shown, it may have re-sold the iron for as much, or even more, than the contract price. Failing to show a readiness to deliver it if the price was paid, raises a presumption that it looks to the property for payment. At all events, the conclusion can not be escaped that its purpose is to keep the goods and at the same time recover pay for them.

It is conceded that injustice would result from thus allowing double satisfaction, but it seems to be thought that result can be avoided by ceasing to make dividends on the $45,148.08 claim when allowed, after it has been paid, less the value of the iron stopped *in transitu*, and by so doing, injustice to other creditors can be avoided, and the requirements of the statute that all debts shall be paid *pro rata*, carried out. This, in effect, is to say, the county court must allow the full amount of the claim, but shall only permit a part of it to be paid. Moreover it may be fairly presumed that the insolvent estate will not pay the full amount of claims against it, and the effect of allowing this claim in full will be to permit claimants to draw *pro rata* dividends on $45,148.08, although it is admitted it will ultimately be entitled to receive but $37,186.58.

On the facts stated, we think the county court decided the case correctly, and its judgment should be affirmed. We do not understand the *Bates case*, 118 Ill. 524, to be in conflict with the views here expressed.

The judgment of the Appellate Court will be reversed and that of the county court affirmed.

*Judgment reversed.*