## Charles R. Wheeler, Assignee, v. Metzger Linseed Oil Company.

1. SALES—*For Future Delivery—Rights of the Parties Where the Vendee Makes an Assignment.*—A contracted with B for six hundred barrels of oil, to be delivered at such time as A might direct before a specified date. Shortly after the sale A made an assignment for the benefit of creditors and thereupon B sold the oil at a loss and filed a claim against A's assignee for the amount thereof. *Held,* that the assignment did not amount to a rescission of the contract, or to a breach thereof; that the assignee had the entire time allowed by the contract to order and pay for the oil and could not be called upon for full performance or placed in default before the expiration of that time, and that B's action gave him no valid claim against A's assignee.

Claim in Assignment Proceedings.—Appeal from the County Court of Peoria County; the Hon. ROBERT H. LOVETT, Judge, presiding. Heard in this court at the December term, 1896. Reversed. Opinion filed June 26, 1897.

WINSLOW EVANS, attorney for appellant.

COVEY & COVEY, attorneys for appellee.

MR. JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This appeal is prosecuted from an order of the County Court of Peoria County, allowing a claim of $2,722.33 against the insolvent corporation of Singer & Wheeler, and in favor of appellee.

It is admitted that $1,460.83 of this amount was due to appellee at the time of filing the claim, for oil and meal cake sold and delivered by appellee to Singer & Wheeler before the assignment; and as to so much of the allowance no objection is made. But the balance, or the sum of $1,361.50, was allowed for an alleged loss upon a resale of 600 barrels of oil, which Singer & Wheeler contracted to purchase from appellee according to the terms of a written contract which appears in the evidence, and which was as follows:

" We, the undersigned, have this day bought and agree to receive of The Metzger Linseed Oil Company, Chicago, Illinois, six hundred barrels pure linseed oil (of about fifty gallons each) delivered in Peoria, Ill., at railroad depot, as follows :

As ordered out by us between October 21, 1895, and August 1, 1896, and to be invoiced as follows : Shipments in month of October, 1895, to be 39 cents for raw; November and December, 39 cents for raw; January, 39½ cents; February, 40 cents; March, 40½ cents; April, 41 cents; May, 41½ cents; June, 42 cents; July, 42½ cents. Boiled oil, 2 cents per gallon over price of raw oil. Raw linseed oil at ——; boiled or bleached, at — per gallon of 7½ pounds.

Terms of payment, thirty days, or less one per cent if paid in ten days from invoice date on each shipment. Shipments to be made as named in this agreement.

It is understood that there are no conditions relating to this purchase other than stated hereon.

Singer & Wheeler.

P. S. Singer, Treasurer.

Peoria, Ill., Oct. 18, '95."

One car of oil had been ordered by Singer & Wheeler from appellee on October 17th, the day before the date of the contract, but the shipment thereof was not made until October 29th. It is a matter of dispute between the parties whether this car load of oil should be treated as a part of the 600 barrels contracted for on October 18th, or otherwise, but under the view we take of the case it is immaterial. The allowance of $1,460.83 covers that car load.

No other shipments of oil were made by appellee to Singer & Wheeler under the contract, nor was any " ordered out " by the latter, who, on January 10, 1896, made a general assignment to appellant for the benefit of creditors.

Appellant duly qualified as assignee and gave the proper notices to creditors, including appellee.

On receipt of this notice appellee sent to appellant a letter of which the following is a copy :

" January 24, 1896.

Mr. Charles R. Wheeler, Assignee, Peoria, Illinois.

Dear Sir : Your notice of being appointed assignee of Singer & Wheeler just received. In reply we wish to say that we have a contract with said Singer & Wheeler for ten cars of linseed oil, containing sixty barrels in each car, or a total of six hundred barrels. Said oil to be delivered by August 1, 1896. We therefore ask you to kindly give us what disposition you wish to make of this oil, as we are ready to deliver same, according to contract. With a soon answer, please oblige,

Very truly yours,

Metzger Linseed Oil Co.,

William G. Metzger, Sec'y.

To this communication appellant made no answer whatever.

No further correspondence or communication seems to have been had between the parties in relation to this contract, and on February 25, 1896, without any notice to the assignee or to Singer & Wheeler, appellee sold 600 barrels of oil on the market in Chicago, at thirty-five cents per gallon, and charged a loss of $1,714.50 to the account of Singer & Wheeler, which was included in the claim filed against the insolvent estate in the County Court.

On the hearing the court reduced the amount of this item, but allowed appellee the difference between thirty-five cents per gallon, for which they sold the 600 barrels on February 25th, and forty cents, the contract price for the month of February, on the 600 barrels of fifty gallons each.

Appellant contends that the court erred in allowing any damages whatever for the alleged failure and refusal to perform the contract and receive the entire six hundred barrels of oil.

We think a proper construction to be placed on the contract is, that Singer & Wheeler had the entire time, including July 31, 1896, to order out the oil and pay for the same, and could not be called upon for full performance or placed in default before that time.

The mere fact of the assignment for the benefit of creditors did not amount to a rescission of the contract, nor to a repudiation or breach thereof on the part of Singer & Wheeler.

Counsel for appellee do not contend that the mere fact of insolvency alone will work a breach of the contract, but they do insist that the assignment of the vendee, coupled with other facts and circumstances, will justify the vendor in presuming that the vendee and his assignee have abandoned the contract. Authorities are cited which no doubt sustain this proposition, but we do not regard them as applicable to the facts of this case. Here there are no facts and circumstances shown by the evidence which evince any intention on the part of Singer & Wheeler, or the assignee, to abandon or repudiate the contract. They simply said nothing and did nothing.

Under the contract and the letter from appellee to the assignee, which we have quoted above, we think the latter had the right to assume that he had until August 1, 1896, to determine what he would do about performing the contract.

Had it then been for the best interests of the insolvent estate the assignee might have been authorized and directed by the court to perform the contract. Singer v. Leavitt, 33 App. 498; Baker v. Singer, 35 Ill. App. 271.

Our conclusion on this point is, that inasmuch as the contract gave the assignee until the end of July to perform it, he was not bound to determine what he would do about it on January 24th, the date of appellee's letter to him on that subject. His mere silence gave no right to appellee to consider the contract as rescinded, and no notice whatever was given to him after the last mentioned date.

There being then no breach of the contract on February 25, 1896, when appellee resold the oil, such sale was premature and unauthorized as against Singer & Wheeler or the assignee. It can scarcely be contended that had Singer & Wheeler, or the assignee, ordered the 600 barrels of of oil on March 1, 1896, and tendered the price, that appellee

would not have been bound to deliver it. The contract did not require that oil should be ordered in any particular month, nor that any specific amount should be ordered at a certain time, but provided that it should be "ordered out * * * between October 21, 1895, and August 1, 1896." Yet, after the sale of the 600 barrels on February 25th, appellee never had any oil on hand with which to fill the contract had Singer & Wheeler or the assignee demanded it. This is testified to by Mr. William G. Metzger, the secretary of appellee, who further says that they ".did not consider the contract at an end. * * * We took it upon ourselves to sell that much oil and put it to their credit." This we think appellee had no right to do at that time. The following authorities sustain our views upon this question: Shaw et al. v. Lady Ensley Coal Co., 147 Ill. 526; Bagley v. Findlay, 82 Ill. 524; Saladin v. Mitchell, 45 Ill. 79; Florence Mining Co. v. Brown, 124 U. S. 385.

If the contract was not at an end, appellee had no right to sell the oil and charge the loss to Singer & Wheeler, and certainly no authority is shown to make the sale as their agents, and when they assumed to do so they acted at their peril. The mere fact the market was declining would not authorize a sale. From anything appearing in the evidence to the contrary, the oil might have been sold at a profit in July, the last month in which Singer & Wheeler had the right to complete the contract.

We think the court erred in refusing to hold, as the law governing the case, propositions numbered 1, 2, 3, 4, 6, 7 and 8, submitted by appellant. They correctly set forth the law applicable to the facts as shown by the evidence, and should have been so held.

The court also erred in allowing any portion of the claim for breach of contract as to the six hundred barrels of oil in controversy, and its order must be reversed.