Bissell, P. J.
Five trials in nisi prius tribunals and two appeals have not yet sufficed to determine the right of this controversy over the sale of some fruit trees of the agreed price and value of $200. We had hoped to be able on this hearing to finally conclude this litigation not only in the interests of the litigants but in the interests of the people. Unfortunately the case was not properly resolved nor the rules of law which govern the rights of vendor and vendee in the sale of personal property observed by counsel or by the trial court. The questions now suggested are wholly foreign to those heretofore presented to us, and the one on which the case now turns is widely different from that heretofore argued and considered. We are very frank to say the abstract does not contain the material requisite to this decision. We should have been quite at liberty to affirm the judgment but a doubt respecting the main legal proposition argued led to an inspection of the record to ascertain whether the entire proof really justified the affirmance. This brought the whole evidence before us and this has led to a conclusion respecting the judgment adverse to its legality, and we have concluded to decide the appeal thereon.
The first two decisions are to be found in the 1st Colo. App. 45 and in the 5th Colo. App. 172. Therein the sole question argued and determined related to the authority of an agent authorized to take orders for the future delivery of stock to bind his principal by the acceptance of chattels in payment for the stock sold when he had no specific or implied authority to this end. This is all there is in either of the two decisions, the only proposition discussed, and the only point *221 decided. It will be wise, and it is necessary, to give a little further history of the case than can be gathered from the statements in either of these opinions. This comes from the difference in the three judgments and from the additional facts which we are compelled to consider in arriving at our conclusion. This suit was begun in the justice court and appealed to the county court. It was brought by Magnes to recover of the Sioux City Nursery and Seed Company $200 as part of the price of two mares which he had sold one Wheeler who acted as the agent of the company in soliciting orders for nursery stock. The balance of the purchase price was paid by an order on the company. Magnes had given orders for nursery stock. The trees, vines, etc., were sent to Denver for delivery to him on his order. There were two orders; one for $150 and the other for $50.00. According to the terms of these written orders Magnes was bound to pay cash on delivery. Refusing to receive and pay for the trees because the company refused to recognize Wheeler’s authority to accept the horses in payment the stock was sold, and bringing only a small part of the purchase price, the company counter-claimed in this suit the difference between the agreed price of $200 and that received on the sale, $25.00. Heretofore Magnes always had judgment. On the first two appeals the cause was reversed. On the third trial the case was submitted to the court on the evidence taken on the preceding trial and contained in the bill of exceptions theretofore prepared, O. K.’d by counsel, and on which the appeals were heard. The third judgment which was in favor of the nursery company was set aside by the trial court and a new trial granted. On the fourth trial counsel for the nursery company attempted to produce the bill of exceptions or transcript of testimony and offer it as the testimony of the witnesses. There seems to have been a change of counsel in the mean time and strenuous objections were offered to the introduction of this bill. The basis of the offer was largely built on the fact that there was an understanding or stipulation between the parties which authorized its use, and the further fact that the wit *222 nesses were without the jurisdiction of the court. Respecting the latter point counsel testified, the witnesses so far as he knew lived in Sioux City and had always lived there, and that it was the home of those who had theretofore been produced. We find, however, in the record and in the old bill of exceptions two stipulations. By one of them it is agreed that the transcript of the testimony taken on the first trial shall be made a part of the bill of exceptions. Then follows the testimony. At the commencement of the bill of exceptions on the second trial in the county court we find a stipulation which in effect is an agreement between counsel in open court that the transcript of the evidence taken on the former trial shall be considered as evidence on this trial without a reexamination of witnesses, and in case of appeal that the same may be embodied in the bill of exceptions. On these two stipulations counsel for the company relied, and on the faith of them attempted to use this transcript. This he was permitted to do over the objection and exception of the present appellant.
We now come to the matter which we have dug out of the bill, and which we use as the basis of this decision. The stock came by rail and reached Littleton on Saturday, the 3d of April. Of this Magnes was advised. There were no instructions to the railroad companj’- to deliver the stock except on payment of the contract price. Magües refused to pay and came to Denver the ensuing Monday, and interviewed one Michaels, who was the delivering agent of the nursery company. He demanded the stock and Michaels announced his readiness to deliver, but coupled with this readiness a demand for $200. Magnes absolutely refused to pay this sum, and said he would neither receive the stock nor pay for it, and the only condition on which he would accept it would be its delivery, and the allowance by the company of the unpaid value of the two horses which he had sold Wheeler, amounting to $200. The company refused to recognize Wheeler’s authority to take horses in payment for stock, would give Magnes no credit on his account or on the *223 bills for the unpaid price, and thereupon he refused to receive the goods. The trees had been reshipped to Denver and stored in a barn. They were shown to Magnes who was told that he could have them on the payment of the price. He substantially said he would under no circumstances receive the stock unless it was delivered in payment of the purchase price of the horses. The stock was kept so far as we can discover from the testimony until the ensuing Monday, when it was sold by the agent. The circumstances under which the trees were sold were not shown. The witnesses were silent about it, except to say that the stock was finally sold out because it was stored in a barn, and they had to pay rent for the barn and wanted to relieve themselves of that liability. Michaels said the stock was sold for what they could get. It is nowhere and in no way stated how, when or to whom, and whether at public or private sale the stock was disposed of. We are left entirely in the dark as to the conditions of the sale, or as to the existence or nonexistence of the necessity for an immediate sale. It is true the transcript contains evidence to the effect that the trees were liable to spoil and had commenced to suffer, and there was some evidence to the point that the stock could not be profitably taken back and set out, and as Johns says, the trees would not pay for the freight if returned. Just what the witnesses mean by these statements is not clear. There was no attempt to put the trees in the ground and preserve them for future sale, nor is there evidence whether this could be safely done. There is none to the point that an effort was made to keep the trees in order to find some one. to whom they might be profitably sold.
We have fairly and fully, and we believe faithfully reproduced and condensed in substantial form the situation. ' To this situation we must now apply the law.
The appellant presents but two points on which he relies for a reversal. The first respects the use of the old bill of exceptions on the last trial, and the other the necessity of notice to the vendee of the time and place of sale, if the *224 vendor would hold him liable for the difference between the contract price and the amount realized on the resale. We shall determine both of these propositions, but put our reversal on a totally different ground.
The exception to the use of the old transcript of testimony or bill of exceptions is in our judgment not well taken. The case can in no manner be brought within the decision in the case of Emerson v. Burnett, 11 Colo. App. 86. The majority of the court held that the evidence of a witness who has removed from the state which was preserved in a bill of exceptions or by stenographer’s notes might be used on a subsequent trial. The reasons assigned are not at all applicable to the present situation. In this case the witnesses were nonresident and it was always open to counsel to sue out a dedimus and take their testimony. There was no sudden removal from the jurisdiction. The witnesses had already been brought here to testify and none of the considerations which permit the use of transcripts of testimony of absent witnesses would prevail or control. While this is true, we are quite of the opinion the nursery company had a right to use the evidence found in the transcript or bill of exceptions, and this for the single and sole reason that the parties made a stipulation which binds them on all trials. By agreement the transcript was made a part of the particular bill of exceptions which was offered in evidence on a former trial. On this trial it was stipulated between counsel that the transcript should be considered in evidence without a re-examination of witnesses and in case of appeal might be embodied in a bill of exceptions. We regard this stipulation as broad enough and full enough to be entirely effectual to make the transcript evidence on any future trial of the cause. As it must of necessity be construed it is the full equivalent of a stipulation to use the deposition of a witness and it is quite clear that such a stipulation controls all subsequent trials of the same cause and permits the use of the deposition, although there may be in the stipulation no direct agreement that the evidence may be used on any and all subsequent *225 trials. Such was the conclusion reached by the Wisconsin court on a somewhat similar stipulation and it quite concurs with our views of what the law is. U. S. Express Co. v. Jenkins, 73 Wis. 471. A broad stipulation permitting the use of this transcript was a thing on which counsel had a right to rely. It was not incumbent on them to take any steps to procure the testimony or the attendance of the absent witnesses, nor do we believe they were under any obligations to ask for a continuance of the casé in order to take it. It had already been agreed that this transcript might be used as evidence. It was also stipulated that it might be made a part of a bill of exceptions on appeal. It was evidence taken in open court on full examination and cross-examination by counsel. It was certified to by the signature of the judge before whom the trial was had; it was further authenticated by the O. K. of both counsel, and under the stipulation we believe it was rightfully offered and used. This disposes of the first question.
The next respects the necessity to give notice to the vendee of the time and place of sale. This really brings up the whole question of the power and right of the vendor in the case of a sale of personal property. As ordinarily expressed his rights are three. He may store the property and sue the vendee for the price; he may sell the property and recover the difference between the price fixed in the contract and that at which the property was sold on the resale, or he may keep the property as his own and recover the difference between the contract price and the market value at the time and the place of delivery. These are his rights and he may exercise any one of them. From the preceding statement it is manifest the nursery company, as vendor, undertook to exercise the second of these privileges. It attempted to sell the stock and hold Magnes for the difference between what they received and the con tract price. He insists this privilege may not be exercised, or if it may, it was not so exercised as to give it the right to recover the difference. This he contends because there is nothing in the record to show that the *226 nursery company gave Mm any notice of the time and place of sale. We confess this question has been a matter of much dispute and the authorities are not at all in harmony on the question. Many of them assume this to be a condition, others decide it to be a condition precedent, and others, and we think the bulk and weight of them, hold there is no necessity to give the vendee this notice. We shall only cite a few cases with reference to this particular proposition, though all of the decisions referred to bear on this question. Holland v. Rea, 48 Mich. 218; Camp v. Hamlin & Barnum, 55 Ga. 259; Pollen et al. v. LeRoy et al., 30 N. Y. 549; Rosenbaums v. Weeden et al., 18 Gratt. 785; Van Brocklen v. Smeallie, 140 N. Y. 70. We are quite ready to concede that one or two of these cases do not seem entirely to support the position which we take, nor to be in perfect accord with the other decisions, but they are full to some of the propositions involved and we do not regard them as opposed to our position. Assuming then that the nursery company was under no obligation to give Magnes any notice of the time and place of sale, and might still recover the difference between the contract price and the sum received, there remains a still further question wMch is of grave importance and which we must dispose of because of its effect on the subsequent trial.
Appellant’s counsel insists that there is a necessity to advise the vendee of the intention to resell. On this proposition there is a more pronounced conflict in the authorities. We are not compelled to go to the verge of holding that there is no necessity to inform the vendee of the intention to resell, nor of holding that the vendor may dispense with this notice under any and all circumstances. All we intend to hold is, that under the circumstances disclosed by this record, the vendor was under no obligation to give the vendee this notice. Some of the cases declare there is no necessity to formally advise the vendee of the intention,-and others again disregard the proposition, apparently because the record shows the party was advised of the purpose when the demand was made on him to comply with Ms contract. Where such *227 facts exist there is no necessity to pass on the precise question. There is, however, a line of cases which hold that this notice need not he given if the defaulting buyer has knowledge or notice of the facts which give the vendor the right to resell and those facts clearly disclose an absolute refusal on the part of the vendee to take. As it was put in one case, “ If having once refused to comply with a contract there be locus penitentice for the buyer, he must avail himself of it without further notice or request from the seller.” If the trees had been left at Littleton and Magnes had abandoned them and refused to take and pay for them, manifestly there would have been no necessity to give him notice of the intention to resell. The law never requires anybody to do a useless act, and this principle is fully applicable to a case' where the vendee refuses to take, declines to carry out his contract and leaves the vendor to do as he pleases with the goods. It is in accordance with principle and depends on these peculiar circumstances. We hold that in the present case there was no necessity to give Magnes notice of the intention to resell the property. Saladin v. Mitchell, 45 Ill. 79; Waples v. Overtaker, 77 Tex. 7; Clore v. Robinson, 38 S. W. Rep. 687; Mann v. National Linseed Oil Co., 34 N. Y. Supp. Rep. 481; Ullmann v. Kent, 60 Ill. 273; Wrigley v. Cornelius, 162 Ill. 92.
We have now decided the bill of exceptions was admissible in evidence, that there was no necessity for notice of the intention to resell, and that usually none need be given of the time and place of sale. Notwithstanding these determinations we do not believe the judgment is right and we are compelled to reverse it though it necessitates a fifth trial and possibly a fourth appeal to this tribunal. In the end neither party will be benefited by the recovery whatever it may be, but both will probably have to expend largely more than the amount in controversy in order to end the dispute. It is not, however, for the courts to suggest an adjustment of differences, they can only decide controversies as they are presented.
*228 The point on which this case turns springs from the circumstances of the resale. The power of the vendor to resell on refusal by the vendee to receive the goods is clear and has been sustained by an unbroken line of decisions for more than a century. The right is not an absolute one in the sense that the vendor may sell when and where and as he pleases and hold the vendee for the difference. The result of a resale can never control the question of damages against the defaulting vendee nor be given in evidence to that end, unless the vendor has satisfactorily proven that he exercised the right in good faith and at such time and in such manner and by such methods, and under such circumstances, as were best calculated to protect the rights of the defaulting vendee, and secure the best market price for the property. It has many times been said the property should be sold at public auction which is always a guaranty of a fair price in a fair market, yet, this is not laid down as an inflexible rule because it has at other times been decided as in case of sale of lead to arrive, or of iron to arrive, that it may be proved it was the custom to sell such lead and such iron through brokers, and then the sale may be made by brokers under proper circumstances and conditions, and in obedience to the usual custom. The vendee must then respond for the difference between the contract price and that which the broker obtained. Doubtless this is always true. It is likewise true perishable property may be sold immediately and parties are not bound to wait and probably would not be bound to wait either to give notice of an intention to sell or notice of time and place of sale in order to use the selling price to control the matter of damages. According to the evidence these trees were perishable. Yet it was testified by Magnes on cross-examination that the trees might have been kept for two or three weeks before they were sold without destruction or much deterioration. There is no evidence to the contrary. It is a matter of common knowledge that trees may be shipped from Sioux City to Denver and by the use of water and resetting be kept for some time in good condition so that they will live when transplanted *229 and have a greater value than if left to rot in the backyard or in a'barn. Under these circumstances we believe it was quite incumbent on the nursery company, if they would recover the difference between the price received on resale and the contract price, to introduce evidence as to the character of the sale, of its fairness and necessity and of the attendant conditions, that the court or jury might determine whether in all respects it was entirely fair and just. The rule is not inflexible that the vendor may recover the difference between the contract price and the sum realized. If the resale has been fairly made this may be the quantum, but if it be not so made, then what he may recover is the difference between the price which they would have produced at such resale had it been fairly held and the contract price, the expense of course in taking care of the goods and selling them being taken into consideration. Since this is the rule the authorities all agree it is incumbent on the plaintiff, which in this case for the purposes of this judgment is the nursery company, to produce the necessary facts to show that in exercising the fight the law was observed and good faith exercised. Unless the vendor makes this proof he may not thus recover. Brownlee v. Bolton, 44 Mich. 218: Smith v. Pettee, 70 N. Y. 13; Rosenbaums v. Weeden, supra; 2 Benjamin on Sales (6th Am. ed.), § 1180, note 5.
Recurring to -tíre statement of the facts it will be observed the nursery company offered no evidence about the circumstances and conditions under which the sale was made, nor anything which tended to establish a necessity for it, or the propriety of it at the time it was made. The company failed to prove the fairness, of the price nor did they attempt to show an effort to make.a sale which would realize the highest price for the stock. Whether there was or was not a market price, whether there was a possibility to make a sale at another or greater price, whether the trees could have been preserved and a market made or a seller procured, all these things were left entirely unexplained by the company, nor was there otherwise any proof on which to base a judgment for the *230 difference between tbe price at which the property was sold and that which Magnes had agreed to pay for it. This difference was assumed to be the measure of the damages and the measure of recovery. While as we have already said this might under some circumstances control, under the proof it was wholly illegitimate and there is in the record no evidence showing that the company sustained damages to the extent of $175, which was their recovery.
Since this is true we are compelled to set aside the judgment and remand the cause for further consideration and the fifth trial which we may be permitted to hope will end this litigation. The judgment is reversed and tire cause remanded for further proceedings in conformity with this opinion.

Reversed.