## MENDEL *v.* MILLER & SONS.

1. If the vendee in a sale of goods refuses to take and pay for them, the vendor may sell the property, acting for this purpose as agent of the vendee, and recover the difference between the contract price and the price of resale. When the vendee is notified by the vendor of the intention to resell, and after such notice a sale is properly made, the vendee is conclusively bound by the resale and the amount realized under it.

2. When in a contract for the sale of goods the vendor reserves title, and delivery is not to be made until the purchase-price is paid, and the vendee refuses to accept the goods and pay for them, while the vendor may exercise the right of resale, in order to charge the vendee under the rule indicated in the preceding note it is the duty of the vendor to use ordinary care in the preservation of the goods between the date that the goods were to be accepted and the date of the resale; and the vendor can not hold the vendee responsible for deterioration during such time

in the value of the goods, unless it appears that the failure to exercise due care resulted from the conduct of the vendee.

3. Some of the instructions of the judge, which were subjects of assignments of error, submitted to the jury issues which were not authorized by the evidence; and the errors thus committed were of such a character as to require a reversal of the judgment.

Submitted June 1,—Decided November 16, 1906.

Action on contract. Before Judge Cann. Chatham superior court. October 18, 1905.

Miller & Sons sued Mendel, alleging, that on February 4, 1904, the defendant gave to the plaintiffs, through their agent at Savannah, Ga., an order for one car-load of No. 2 white corn in sacks, and on February 18, 1904, the plaintiffs shipped the corn to the defendant, charging therefor $369, and the corn arrived in Savannah on February 23, 1904. It was shipped "order notify Jonas Mendel." A draft for the purchase-money was attached to the bill of lading. The effect of this was to make the purchase-money payable on the arrival of the corn, which is the usual method of shipment in grain transactions. When the corn arrived in Savannah the defendant was notified, and he caused an inspection of the grain to be made by the official inspector of the Savannah Board of Trade, and the grain was classed as No. 2 white corn, and the defendant notified of this fact. Notwithstanding this, the defendant delayed payment of the draft, requesting that it be held for later payment. During this delay the corn remained on the wharves at Savannah, and was exposed to dampness arising from the river and the fogs prevalent at that season; all of which was known to defendant. The plaintiffs, expecting each day that the defendant would comply with his agreement to pay and remove the corn, permitted it to remain on the wharves, but would not have done this had not the defendant assured the plaintiffs that payment would be made in a short while; and the defendant knew that the reason why the plaintiffs permitted the corn to remain on the wharves was his repeated promises to pay the draft and take possession of the corn. The corn could not be removed by the plaintiffs without great trouble and expense, as they had no warehouse in Savannah; all of which was known to the defendant. On April 7, 1904, the defendant notified the plaintiffs that he would not pay the draft and accept the corn. At the time of this notice the corn, through exposure to dampness, had deteriorated in value. On May 10,

1904, the plaintiffs elected to sell the corn, as agent of the defendant, and recover the difference between the contract price and the price of the resale. Notice to this effect was given to the defendant, and his consent requested that the corn be sold and the amount realized be held subject to any judgment which the plaintiffs might obtain against the defendant. The defendant consented that the corn be sold to the best advantage for the benefit of all concerned, but this consent was given without prejudice to any rights of the defendant. On May 31, 1904, having secured bids from every grain dealer in Savannah who cared to submit a bid, the plaintiffs sold the corn to the highest bidder, for $200.20. This amount being deducted from the amount of the purchase-money leaves the defendant due the plaintiffs $168.80, as damages. The defendant is indebted to plaintiffs the further sum of $12, storage charges paid to the transportation company owning the wharves.

The defendant demurred to the petition generally, and on the grounds that it did not set forth the correct measure of damages, that it did not show what the market price of the corn was on the day the defendant should have received the corn or rejected it, and that it did not show the difference in price between the contract price and market price on the day the defendant should have received it. The demurrer was overruled, and the defendant excepted pendente lite. The defendant filed an answer, which in effect denied all the allegations imposing liability upon him, and specially pleaded that the plaintiffs shipped him a car of corn, but it did not come up to the specifications of the order; also that the corn was not of the kind, character, or quality ordered, and for this reason he rejected it. The jury returned a verdict for the plaintiffs, for the full amount sued for. A motion for a new trial was overruled. Error is assigned upon the judgment overruling the motion for a new trial, and upon the exceptions pendente lite.

*Osborne & Lawrence,* for plaintiff in error, cited: Civil Code, §§ 3675, par. 8, 3543; Ga. R. 88/325; 110/145; 115/119; 67/352; 73/510; 77/503; 87/336; 85/314(3).

*Twiggs & Oliver,* contra, cited: Civil Code, § 3551; Ga. R. 87/-221; 92/647; 109/608; 122/370; 111/185; 83/685(3); 85/297(4), 373(5).

ATKINSON, J. (After stating the facts.) 1. When one sells goods to another and the vendee refuses to take and pay for the

same, the vendor has three remedies. He may retain the goods and recover the difference between the contract price and the market price at the time and place of delivery. He may sell the property, acting for this purpose as the agent of the vendee, and recover the difference between the contract price and the price of resale. Or he may store and retain the goods for the vendee and sue for the entire price. Civil Code, § 3551. If the vendor elects to take the second remedy and resell, due notice of the intention to resell must be given to vendee. It is not necessary that this notice should contain information as to the time and place of sale, but there must be a notice of the intention to sell for the benefit of the vendee. If after such notice a sale is properly made, and the goods bring less than the contract price, the vendee is conclusively bound by the resale and the amount realized by it. *Davis Sulphur Ore Co.* v. *Atlanta Guano Co.,* 109 *Ga.* 607. The remedies above referred to, each and all of them, are available even in a case where the goods are shipped to be paid for on delivery, and where payment of a draft is a condition precedent to the delivery of the goods by the carrier to the purchaser. *McCord* v. *Laidley,* 87 *Ga.* 221. See also, in this connection, *Seaboard Lumber Co.* v. *Cornelia Planing Mill Co.,* 122 *Ga.* 370. The demurrer was properly overruled.

2. The contract was for the sale of corn of a certain quality. The corn was to be shipped, and to be paid for before delivery; that is, the vendor retained the title until the corn had been paid for. If the corn was of the quality ordered, the vendee was bound to pay the purchase-price on demand, and accept the corn when offered. There is no conflict in the evidence as to the terms upon which the corn was sold, or as to the quality of corn to be delivered. There is a conflict as to the time of delivery, and also a conflict as to what transpired between the defendant and the agent of the plaintiff after the corn reached Savannah. The agent of the plaintiff testified that the corn was purchased for prompt delivery, which, as explained by him, meant that the corn should be shipped at any time within fifteen days. He also testified that the contract was made under the rules of the Savannah Board of Trade, and one of the rules of that board was that prompt delivery meant shipment and delivery within five days. The defendant testified that the corn was bought for immediate shipment. Under the rule of the Savannah Board of Trade, this meant shipment within two days.

But the defendant denied that the contract was made under the rules of the Board of Trade. There was no special plea setting up that the goods were not promptly shipped, the only special defense pleaded being that the corn which reached Savannah was not of the quality ordered. Under the view we take of the case, it is not necessary to determine whether, under the averments of the petition and the general denial by the answer, the question of whether the failure to ship in due time, as contended by the defendant, was available as a defense. For the purposes of this case, it will be conceded that the corn was shipped in due time. There is little or no conflict in the evidence as to the condition of the corn at the time it reached Savannah, and that it was then of the character and quality ordered. There is also little or no conflict with the evidence that at the time of resale it had deteriorated in value, and that this had been brought about by the fact that it had remained upon the wharf in Savannah, subject to the action of the moist atmosphere resulting from proximity to the river and fogs.

If the corn was not of the quality ordered, of course the defendant was not bound to accept it at any time. If the corn was of the quality ordered, the defendant was bound to accept and pay for it on demand. The plaintiffs had the right, after due notice of nonacceptance, to treat the corn as the property of the vendee, sell it, and charge the vendee with the difference between the contract price and the price of resale. But in order to exercise this right and bind the defendant by the price at resale, it was incumbent upon the plaintiffs to exercise due care in preserving the corn in the condition it was in at the time it reached Savannah, until a resale was made. If the plaintiffs allowed a condition of affairs to continue that would cause a deterioration in the value of the corn, which they could have prevented by the exercise of due care, the defendant could not be held responsible for the deterioration in value, unless the failure of the plaintiffs to exercise due care resulted from the conduct of the defendant. Whether the corn being allowed to remain on the wharf in Savannah was due to the conduct of the defendant is a question about which the evidence is conflicting. Evidence for the plaintiffs authorized a finding that the defendant, upon notice that the corn had arrived in Savannah, asked for a delay of a few days before paying the draft and accepting the corn, and that the defendant's conduct was such, from time

to time, as to leave the impression that the draft might be paid any day and the corn accepted. The defendant denied that he was responsible at all for the delay in removing the corn from the wharf. The jury were authorized to find, as stated, that the delay in removing the corn was due to the dilatory method adopted by the defendant in reference to the payment of the draft. If this is the truth of the case, it would not lie in the mouth of the defendant to claim that he should not be charged upon the basis of the value of the corn at the time it was received in Savannah, when the delay and deterioration were the direct results of his conduct. On the other hand, if the case was that the defendant promptly refused to accept the corn and the failure to remove it from the wharf resulted in its deterioration in value, the defendant would not be responsible for this deterioration, if it should appear that the plaintiffs in the exercise of ordinary diligence should have removed it to a place of deposit where such deterioration would not have taken place. The defendant may have given an untenable reason for refusing the corn,—that is, that the corn was not shipped promptly; but without reference to this, pending the period that elapsed from the time the corn reached Savannah to the date of resale, the vendor was under obligation to exercise due care in the preservation of the corn until it could be resold. We do not think that the charge of the court distinctly submitted this issue to the jury, and some of the exceptions to the charge as given were well taken, for the reason that the instructions as given excluded this issue from the consideration of the jury.

3. Some of the instructions of the judge which are assigned as error submitted to the jury the question of delivery in cases of sale, explaining the difference between actual and constructive delivery, etc. We have been unable to find any evidence which authorized the submission of this issue to the jury. There was no delivery, either actual or constructive, as we apprehend the evidence. It is true that there was a rule of the Savannah Board of Trade, which was in evidence, as follows: "Number of lay days allowed after arrival of goods before rejecting or accepting, five days after being discharged from car or vessel as case may be." But we do not think it a proper construction of this rule that a delay of more than five days before accepting or rejecting would, after a lapse of that time, amount to a constructive delivery of the goods.

Other portions of the charge upon which error was assigned contained instructions upon what would be the law in the event that there had been a change of the contract to an ordinary sale of goods. We do not see any evidence authorizing an instruction upon this subject. As we apprehend the evidence, a jury would not be authorized to find that there had been any change in the terms of the contract. The plaintiff steadfastly maintained its position as a seller of goods with the purchase-price payable before delivery. The defendant, with equal vigor, maintained that he was not bound to receive the goods, because they were not of the quality ordered, and that they were not shipped in due time. In addition to this, there was nothing in the plaintiff's petition to authorize a recovery on any other theory than that the goods were shipped with title reserved, purchase-price to be paid on demand before delivery. The submission of these two issues to the jury, which it seems to us was entirely unauthorized by the evidence, was prejudicial to the defendant, and a reversal of the judgment must result. In reference to those assignments of error which complain of the judge allowing certain evidence in rebuttal, which should have been offered in chief, we only have to say that these fall within the rule that the judgment will not be reversed on this ground, unless a manifest abuse of discretion appears, which is not true in this case.

*Judgment reversed. All the Justices concur.*