THE WHITE WALNUT COAL COMPANY, Defendant in Error, *vs.* THE CRESCENT COAL AND MINING COMPANY, Plaintiff in Error.

*Opinion filed April 18, 1912—Rehearing denied June 12, 1912.*

1. APPEALS AND ERRORS—*judgment of Appellate Court settles question whether vendee was in default.* The judgment of the Appellate Court approving. the verdict of the jury in an action by the vendor for damages for breach of a contract of sale settles the question whether the defendant was justified in rescinding the contract upon the ground that the commodity delivered was not up to the standard of the sample submitted by the vendor.

2. SAME—*objections not urged in Appellate Court are waived.* Where the only objection made in the Appellate Court to an instruction is that it does not state the correct measure of damages applicable to the case, other specific objections to the instruction are waived and cannot be raised in the Supreme Court.

3. SALES—*right of vendor to re-sell goods after vendee refuses to accept them.* Where a vendee of goods sold at a specified price refuses to take and pay for them, the vendor may, after giving notice to the vendee, proceed to sell the goods to the best advantage and may recover from the vendee the difference between the net amount realized and the contract price; but in such case the vendor takes the position of agent for the vendee and must use diligence and fidelity in re-selling the goods.

4. SAME—*vendor is not bound to re-sell goods at place of delivery specified in contract.* Where the vendor elects to re-sell the goods after notice that the vendee will accept no further shipments, he is bound to use reasonable diligence to sell the goods at the best price obtainable; but in the exercise of his discretion in selecting a market the vendor is not bound to re-sell at the place of delivery fixed by the contract, although he may do so if he deems that market the most advantageous. (*Roebling's Sons' Co. v. Lock Stitch Fence Co.* 130 Ill. 660, and *Penn Plate Glass Co. v. Rice Co.* 216 id. 567, distinguished.)

5. SAME—*effect of re-sale in good faith is to liquidate the damages.* Where the vendee has refused to accept further shipments under the contract and the vendor, after notice to the vendee, re-sells the goods, the effect of the re-sale, if made in good faith and with due diligence to secure the best price obtainable, is to liquidate the damages, and the vendor may recover from the vendee the loss represented by the difference between the contract price and the net amount realized from the re-sale.

6. SAME—*rule as to measure of damages in case of re-sale is not limited to goods already produced.* The rule concerning the measure of damages where the vendor elects to re-sell a commodity rejected by the vendee is not limited to contracts for the sale of a commodity already produced or manufactured ready for delivery, but applies also to executory contracts where the commodity is produced after notice of non-acceptance by the vendee, such as a contract for the delivery of a certain number of tons of coal screenings per month up to a specified date.

7. INSTRUCTIONS—*when giving of an improper instruction is harmless.* If the jury, under the facts found by it and approved by the Appellate Court, has applied the correct measure of damages as laid down in the plaintiff's instruction, the fact that the court, in attempting to modify an instruction offered by the defendants stating an incorrect rule, renders it unintelligible and contradictory of itself and the correct instruction, and gives it as modified, is not ground for reversal.

CARTWRIGHT, HAND and DUNN, JJ., dissenting.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUT-HILL, Judge, presiding.

ULLMANN, HOAG & DAVIDSON, and GUERIN, GALLAGHER & BARRETT, (PARKER H. HOAG, and M. F. GALLAGHER, of counsel,) for plaintiff in error.

TENNEY, COFFEEN, HARDING & SHERMAN, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The White Walnut Coal Company is a corporation engaged in mining and selling coal, its mines and place of business being located at Pinckneyville, Perry county, Illinois. The Crescent Coal and Mining Company is a corporation engaged in buying and selling coal, located in Chicago, Cook county, Illinois. On May 4, 1905, the following contract was entered into between said companies:

"This contract, made by and between the Crescent Coal and Mining Company, of Chicago, Illinois, party of the first part, and the White Walnut Coal Company, of Pinckneyville, Illinois, party of the second part:

"*Witnesseth*—The party of the second part hereby agrees to load at its Pinckneyville mines a minimum of five thousand (5000) and maximum of seven thousand (7000) tons per month, until April 1, 1906, of standard screenings, containing nut, pea and slack as per sample shipped for test, and deliver the same to the party of the first part, f.o.b. cars Illinois Central tracks at Chicago, for one dollar and thirty-two and one-half cents ($1.32½) per ton of 2000 pounds, with the understanding that if there is any reduction in the freight rate there will be a corresponding reduction in the price.

"The party of the first part hereby agrees to accept the coal as above stated and to pay for the same on the 20th of each month following shipments, mine weights to govern settlement.

"It is further agreed and understood that the second party will not be required to furnish the said coal in case of strikes, breakdowns or other causes beyond its control.

"Signed in duplicate this 4th day of May, 1905."

The White Walnut Coal Company brought an action of assumpsit against the Crescent Coal and Mining Company, in the circuit court of Cook county, to recover damages for an alleged violation of said contract, resulting from the refusal of the Crescent Coal and Mining Company to receive and pay for a portion of the screenings which the plaintiff was ready and willing to deliver under said contract. A jury trial resulted in a verdict, upon which judgment was afterwards rendered in favor of the plaintiff below, for $10,638.90. The judgment having been affirmed by the Branch Appellate Court for the First District, the record has been brought to this court for further review by writ of *certiorari.*

The facts, in brief, are, that defendant in error shipped 27,700 tons of screenings to plaintiff in error between the making of said contract and October 27, 1905, 17,910 tons of which were accepted and 9790 tons rejected on the alleged ground that the screenings were not up to sample. On October 27, 1905, plaintiff in error wrote defendant in

error as follows: "Since you are evidently not disposed to give us merchantable screenings, such as the sample cars upon which we made our contract, we have decided to and hereby notify you that we have rescinded your contract for failure to comply with same, and that we shall hold you for all damages sustained by us by reason of such default upon your part, and you may govern yourselves accordingly." On November 3 defendant in error replied to said letter as follows: "Yours of October 27 received. We must decline to accept your order rescinding our contract, and we most emphatically dispute your right to do so, for the reason that there is no occasion for the same by any act of ours. We have had the coal shipped to you carefully inspected, and we know that it is standard and the same as sample submitted. However, as you refuse to accept my screenings under this contract, it, of course, would be idle for us to go through the form of shipping the cars to you simply to have them rejected. We shall, accordingly, dispose of the coal at the best price we can get in the market, and whatever damage we may suffer by your refusal to accept it we shall expect you to pay to us." Thereafter defendant in error continued to produce screenings at its mines and sold the same in Chicago, St. Louis and Minneapolis. Approximately $20,000 was credited to plaintiff in error's account as the net proceeds of these sales, although the screenings were sold much below the contract price. The defendant in error rendered monthly statements of the amount of shipments and receipts and advised plaintiff in error of the balance claimed to be due. The amount of the loss upon the screenings shipped and sold, after deducting freights and commissions, was adopted by the court below as the correct measure of the defendant in error's damages, and a verdict and judgment for that amount were rendered against plaintiff in error.

In the trial court two questions were controverted. First, the making of the contract and the subsequent at-

tempt of plaintiff in error to rescind the same were admitted, and it sought to justify the course pursued by alleging that the screenings shipped under the contract were not up to sample. This contention presented a question of fact, and the affirmance of the judgment by the Appellate Court settles that question adversely to the contention of plaintiff in error. Second, assuming that plaintiff in error is in default, a difference of opinion between the parties exists as to the proper measure of damages. Defendant in error contends that its measure of damages is the difference between the contract price and the net amount realized from a re-sale of the screenings, while plaintiff in error contends that the measure of damages is the difference between the contract price and the market price of such screenings in the city of Chicago. In other words, plaintiff in error contends that since Chicago was the place of delivery under the contract, the right of the seller to re-sell the goods and hold the purchaser for the loss upon such re-sale is limited to the market designated as the place of delivery in the contract. On the other hand, the defendant in error contends that when circumstances exist giving the seller a right to re-sell the goods, it is the duty of the seller to use reasonable care and diligence in re-selling and to secure the largest net amount obtainable for the goods, and that the right to re-sell is not limited to the particular place designated in the contract as the place of delivery. The court below adopted defendant in error's view of the law on this question and embodied that view in the following instruction given to the jury on behalf of defendant in error:

"If you find, from the evidence, that the plaintiff sold the coal which it shipped under the contract and which was not accepted by the defendant, to the best advantage under the circumstances, then the measure of plaintiff's damages is the difference between the contract price of the coal so shipped by plaintiff and the net amount realized by plaintiff from the sale of the same."

The court modified instruction No. 28 asked on behalf of plaintiff in error, which in its original form was a statement of the rule as to the measure of damages as contended for by plaintiff in error. The assignment of error upon the giving of the instruction above set out on behalf of defendant in error and the modification of instruction No. 28 and the giving of the same as modified raises the only legal question that is open for consideration in this court.

In its brief filed in this court plaintiff in error objects to the instruction given on behalf of defendant in error on the ground that it does not include the hypothesis that such re-sale must be fair and must be made in good faith and in the mode best calculated to produce the real value of the goods, and omits the qualification that the charges for making the re-sale were reasonable and necessary, and also because, it is said, the instruction assumes the existence of a right in defendant in error to recover damages. An examination of plaintiff in error's brief filed in this cause in the Appellate Court, a certified copy of which, on motion of defendant in error, has been filed in this court, shows that none of the aforesaid objections were raised in the Appellate Court. Under numerous decisions of this court all questions not raised and argued in the Appellate Court are waived and cannot be raised for the first time in this court. (*Dunn* v. *Crichfield,* 214 Ill. 292; *Chicago and Alton Railroad Co.* v. *American Strawboard Co.* 190 id. 268; *United Breweries Co.* v. *O'Donnell,* 221 id. 334.) The only objection urged against said instruction in the Appellate Court and which is also argued here is, that the instruction does not state the correct measure of damages applicable to the case and that said instruction was in conflict with instruction No. 28 as modified and given on behalf of plaintiff in error. The only question, therefore, that need be considered here is, whether the instruction complained of states a correct rule of law as to the measure of damages under the situation presented by this record.

In the early case of *Bagley* v. *Findlay*, 82 Ill. 524, this court recognized and applied the rule that when a vendee of goods sold at a specific price refuses to take and pay for the goods, the vendor may, after giving notice to the vendee, proceed to sell the goods to the best advantage and recover from the vendee the loss if the goods fail to bring the amount of the contract price. In that case it was observed that the vendor in such case takes the position of an agent for the vendee and is held to the same degree of care, judgment and fidelity that is imposed by law upon the agent put in the custody of such goods with instruction to sell them to the best advantage. In so far as the rights of the vendor to re-sell and his duty to use diligence and fidelity in conducting the sale are concerned, there appears to be no difference between a re-sale where the purchaser refuses to accept the goods and pay for them, and the case of a vendor who, owing to the insolvency of the vendee, in the exercise of his right of stoppage *in transitu*, re-possesses himself of the goods and after notice to the vendee re-sells them for the best price obtainable. In both cases the vendee is liable to the vendor for the difference between the net amount realized upon the re-sale and the contract price. Mechem on Sales, sec. 1622; *Shaw* v. *Lady Ensley Coal, Iron and Railroad Co.* 147 Ill. 526.

As we understand the contention of plaintiff in error, the right of a vendor to re-sell the property contracted to be sold, upon the refusal or inability of the vendee to accept and pay for the same, is not questioned as a general legal proposition, but its contention is that where the contract designates a particular place of delivery the right to re-sell can only be exercised at such place. If there were no authority on the subject, sound reason would seem to be against the limitation sought to be placed upon the right of re-sale by plaintiff in error. All of the authorities agree that the vendor must exercise reasonable diligence to minimize his damages by obtaining the highest possible price for

the goods. This rule tends to protect the defaulting vendee by reducing the amount of damages for which he must ultimately respond. If the vendor must sell the goods at the place of delivery, regardless of the price at other available markets, he has no choice of markets and no opportunity to exercise his care and diligence to secure the highest price to be obtained. Suppose, in the case at bar, after plaintiff in error refused to receive and pay for the screenings purchased, such screenings would have brought only ten cents per ton, net, in the Chicago market, and the same screenings would have sold for fifty cents per ton, net, in St. Louis. It would be as unjust as it is unreasonable to hold that defendant in error would be compelled to sell such screenings in Chicago, thereby increasing the damages plaintiff in error would have to pay, when it was known to defendant in error a more advantageous sale could be made in St. Louis. Such a rule, if applied generally, would often work a great hardship upon the unfortunate vendee without any corresponding advantage to the vendor.

The question under consideration is not, however, a new one but has received the consideration of courts and text writers, and the authorities are practically uniform that the vendor is not bound to re-sell at the contract place of delivery or within the contract time for delivery. (35 Cyc. 524; Mechem on Sales, sec. 1638.) In the section cited above, Mechem says: "With respect to the place at which the re-sale should be made, no hard and fast rule can be laid down. A particular place is not to be insisted upon, but good faith and a fair and reasonable endeavor to get the best available price for the goods are essential. The place at which the buyer was to receive the goods is not necessarily the best place for the re-sale; neither is the nearest market, or even a market within the State, necessarily the most appropriate. Regard must be had for the character of the goods and the time, circumstances and places that regulate and control prices." In support of the

text above quoted numerous authorities are cited. In the cases of *North Georgia Milling Co.* v. *Henderson Elevator Co.* 130 Ga. 113, and *Waples & Co.* v. *Overaker,* 77 Texas, 7, the precise question under consideration here was presented and decided contrary to the contention of plaintiff in error. The place of delivery under the contract is not excluded from the markets where a re-sale may be made, but if the vendor re-sells ·at the place of delivery he does so, not because the contract designates such place for the delivery, but because, in the exercise of his best judgment and discretion, he believes that such place is the most advantageous market. Where a re-sale has been made in good faith, after notice to the vendee, the difference between the net amount realized from such re-sale and the contract price is the proper measure of damages. The effect of the re-sale, when properly made, is to liquidate the damages and is conclusive upon both parties. Mechem on Sales, sec. 1649; *Pollen* v. *Lepoy,* 30 N. Y. 549; *Wonderlee* v. *Holmes Lumber Co.* 56 Mich. 412; *Scott Lumber Co.* v. *Hafner-Lotham Lumber Co.* 91 Wis. 667; *Hardwick* v. *American Can Co.* 113 Tenn. 657.

In *Roebling's Sons' Co.* v. *Lock-Stitch Fence Co.* 130 Ill. 660, the re-sale was made at Joliet, Illinois, which was the place designated in the contract for the delivery. Notice by the vendee to the vendor that the vendee would receive no more of the goods was disregarded by the vendor, and it continued to ship and tender the wire as required by the contract. This the seller had a right to do in order to establish that the vendor was willing and able to perform its part of the contract. It was not held, however, in that case, that the contract required the vendor to·continue shipments to the place of delivery after the repeated announcements of the vendee that no more of the goods would be received. The primary purpose of proving that the vendor continued its shipments to Joliet was to establish that element of the vendor's case ·which requires that he shall show

that he was ready, willing and able to perform the agreement on his part until the termination of the executory agreement. Clearly, such readiness and willingness on the part of the vendor to perform may be shown by other competent evidence, and it is not necessary that shipments to the place of delivery should be continued after notice from the vendee that he will receive no more of the goods. After completion of the shipments under the contract the vendor gave the vendee notice, advertised the goods and sold them at public auction in Joliet and charged the vendee with the loss on such re-sale. In that case the difference between the contract price and the net amount received on re-sale was recognized as the proper measure of the seller's damages, not because the sale was made at Joliet, but because "the proof tends to show that the sale was fairly made with reasonable diligence, judgment and care." The right of the seller to re-sell the goods which the vendee refuses to accept, in markets other than the place of delivery under the contract, was not involved or passed on in that case. It is not, therefore, an authority which has any bearing upon that question. In *Penn Plate Glass Co.* v. *Rice Co.* 216 Ill. 567, the re-sale was made at a place other than that designated in the contract, but that is not a case which decides the question under consideration here.

Plaintiff in error finally contends that the rule which authorizes the vendor to re-sell the goods which the vendee has refused to accept can only be applied to contracts for the sale of goods already produced or manufactured and ready for delivery, and cannot apply to executory contracts, where the goods are not in existence but must be produced after notice that the vendee will not receive them. The distinction sought to be pointed out by plaintiff in error is not recognized by the law but the contrary thereof is well established. *Hardwick* v. *American Can Co. supra; Davis Sulphur Ore Co.* v. *Atlantic Co.* 109 Ga. 607; *Ack-*

*erman* v. *Rubens,* 167 N. Y. 405; Mechem on Sales, secs. 1621, 1647, *et seq.*

The instruction given for defendant in error is not open to the objection urged against it in the Appellate Court. We express no opinion as to objections urged in this court for the first time.

Plaintiff in error contends that the court erred in modifying instruction No. 28. The instruction as originally submitted was clearly incorrect and should have been refused. The instruction stated the measure of damages directly contrary to the rule laid down in the instruction already considered which was given for defendant in error. The court, however, undertook to modify the instruction so as to bring it into apparent harmony with the instruction given for the other party. The result is that the instruction is not a correct statement of the law upon the theory of either party. A reading of the modified instruction shows that it is contradictory of itself as well as of the instruction given for defendant in error, but we cannot see how the giving of this instruction has in any way prejudiced plaintiff in error. The instruction as given is a jumble of contradictory and unmeaning phrases and sentences, but apparently the jury has followed a correct instruction in applying the measure of damages to the situation presented. Assuming the facts to be as found by the jury and approved by the Appellate Court, the true measure of damages has been applied in this case. That is all that either party was entitled to. It is apparent that the jury were not misled by the modified instruction complained of.

There are no other questions open for our consideration upon this record.

The judgment of the Branch Appellate Court for the First District is affirmed.          *Judgment affirmed.*

CARTWRIGHT, HAND and DUNN, JJ., dissenting.