## GROWERS' EXCHANGE v. JOHN A. ECK CO.

No. 4293.   Decided December 11, 1925.   (242 P. 391.)

1. APPEAL AND ERROR—RECEIVING INCOMPETENT EVIDENCE OF QUALITY NOT REVERSIBLE ERROR, WHERE QUALITY ALSO PROVEN BY COMPETENT EVIDENCE. Where seller introduced evidence of quality of shipment of onions by testimony of men who hauled and loaded them and of inspectors, which was competent and sufficient to sustain finding of court, *held* not reversible error to receive inspector's certificates in evidence, even though they were hearsay and incompetent.

2. SALES—PROPER RESALE WAS EVIDENCE OF MARKET VALUE. In action for damage occasioned by refusal of buyer to receive shipment of onions, where buyer objected to court's finding, on ground there was no evidence of market value, necessary, under Comp. Laws 1917, § 5173, subd. 3, to compute damage, *held*, proper resale is some evidence of market value, and finding as to proper resale was sufficient.

3. SALES—NO PARTICULAR METHOD OF RESALE NECESSARY, WHERE BUYER REFUSED GOODS. Where seller of shipment of onions claimed title passed to buyer through operation of Comp. Laws 1917, § 5155, relative to effect of delivery to carrier, and section 5157, relative to acceptance, and that buyer's liability on refusal to receive onions depended on amount realized at resale, *held*, no particular method of resale was necessary; seller having right to exercise discretion within reasonable bounds, in absence of instruction from buyer.

Corpus Juris-Cyc. References.

[1] Appeal and Error, 4 C. J. p. 1000 n. 24.
[2] Sales, 35 Cyc. p. 592 n. 53.
[3] Sales, 35 Cyc. pp. 523 n. 30; 597 n. 89; 598 n. 91.
[4] Sales, 35 Cyc. p. 589 n. 20.
[5] Sales, 35 Cyc. pp. 523 n. 24, 30, 31; 524 n. 35, 36; 597 n. 89.
[6] Sales, 35 Cyc. p. 598 n. 95.

4. SALES—BURDEN ON BUYER TO SHOW LACK OF CARE IN RESALE. Where seller resold shipment of onions after buyer's refusal to receive it, in seller's action for loss occasioned in transaction, *held*, that burden was on buyer to introduce evidence showing lack of reasonable care in resale.

5. SALES—PROOF OF MARKET VALUE MAY NOT BE NECESSARY IN CASE OF RESALE. In view of Comp. Laws 1917, § 5169, relating to resale by seller, which requires only that seller exercise reasonable care and judgment, it is doubtful whether it is essential to prove market value in case of resale.

6. SALES—BUYER CANNOT COMPLAIN OF SELLER'S ACTION ᶦON HIS FRAUDULENT REPRESENTATION. In action against buyer for loss occasioned by his refusal to receive shipment of onions, he could not criticize seller for refusing to accept his offer of price, less than that in contract, but more than was received on resale, when such offer was accompanied by fraudulent representation of inspection, and was intended to induce seller to reduce price.

Appeal from District Court, Third District, Salt Lake County; *M. L. Ritchie,* Judge.

Action by the Growers' Exchange against the John A. Eck Company. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Cheney, Jensen, Martineau & Stephens,* of Salt Lake City, for appellant.

*Willey & Willey,* of Salt Lake City, for respondent.

THURMAN, J.

On the 7th day of September, 1923, plaintiff, a Utah corporation doing business in Salt Lake City, sold to defendant, an Illinois corporation doing business in Chicago, five carloads of United States No. 1 large Spanish onions at the agreed price of $2.75 per hundredweight f. o. b. Utah. It is alleged in the complaint, in substance, that between the 9th day of October and the 1st day of November, 1923, on

divers dates, plaintiff placed said onions on board cars in Utah and shipped the same to defendant at Chicago, Ill.; that defendant refused to accept and pay for said onions, and plaintiff was compelled to sell the same to other persons; and that, by reason of defendant's refusal to accept the same, plaintiff suffered a loss aggregating the sum of $2,446.83, together with interest thereon from the 7th day of September, 1923, for which sum plaintiff prays judgment. Defendant, answering admits the purchase of the onions and the shipment to it of certain onions, but alleges they were not of the kind and quality purchased by it, but were of an inferior grade, quality, and size, and, for that reason, defendant refused to accept and pay for the same. Defendant denies that plaintiff has been damaged by defendant's refusal to accept said onions, in any sum or amount whatever. The trial court, to whom the case was tried without a jury, entered findings and judgment in favor of plaintiff for the amount prayed for in its complaint. Defendant appeals and assigns as error numerous findings of the court and the admission of evidence over defendant's objection. The contract of sale and the refusal to accept and pay for the onions appear from telegraphic correspondence between the parties attached to and made a part of the complaint.

During the progress of the trial plaintiff offered in evidence the certificates of the inspectors, who inspected the onions at plaintiff's request while they were being loaded on the cars for shipment. There were five of these certificates issued by the Utah inspectors, one for each carload. There were five other certificates issued by Chicago inspectors, on reinspection at plaintiff's request after the defendant announced its refusal to accept the onions. Each of these certificates was admitted in evidence over appellant's objections. The objection was that the evidence was hearsay and incompetent. The Utah inspectors were appointed by the state department of agriculture and their appointment confirmed by the Department of Agriculture of the United States. Each of the Utah inspectors was called and sworn as a witness for the plaintiff. They testified in consider-

able detail as to the method of their inspection. The inspection appears to have been careful and painstaking. Each carload was inspected at the time of loading. The certificates were issued in accordance with their finding after the inspection was made. In addition to this, testimony was given at the trial by two witnesses, who hauled the onions and loaded them on the cars, and who qualified as witnesses of practical experience. They testified to the same effect as did the official inspectors. No witness who saw the onions before they were shipped testified to the contrary. It would seem, therefore, that at the time the onions were delivered to the defendant on board cars in Utah, the quality of the onions, as conforming to the contract, was established beyond all reasonable doubt. Inasmuch as there was competent evidence to sustain the findings as to the grade, quality, and size of the onions, the error complained of is not reversible, even though it be conceded that the evidence objected to was hearsay and incompetent.

Appellant's principal grounds, however, for a reversal of the judgment, are raised by its exceptions to certain findings of the court. There are five of such findings, one respecting each car of onions. Omitting dates, quantities, and values, and substituting blanks instead, the findings excepted to read as follows:

"That on the —— day of October, 1923, pursuant to said agreement, the plaintiff loaded on a car at Woods Cross, Davis county, Utah, a carload of onions of the quality specified in said contract, and being United States No. 1 large Spanish onions, consisting of —— sacks, weighing in all ——, for which the defendant agreed to pay the sum of $908.46, and shipped the same to the defendant at the city of Chicago, state of Illinois, and on the day of said shipment notified the defendant by telegram that said onions had been shipped, but, upon the arrival of said onions at the city of Chicago, state of Illinois, defendant refused to accept and pay for the same, and the plaintiff, as soon as it was advised of the defendant's refusal to accept and pay for said onions, consigned the same for resale to the Continental Distributing Company, a firm in Chicago, engaged in the sale and distribution of produce, who resold said car of onions on the market in the city of Chicago for the sum of ——, and said Continental Distributing Company, after making the necessary deductions for freight, demurrage, and brok-

erage, amounting to the sum of ——, remitted to this plaintiff the sum of ——; that, upon the refusal of the defendant to accept said car of onions, plaintiff was compelled, under government regula- tions, to have a reinspection thereof at a cost to plaintiff in the sum of ——; that, by reason of the defendant's failure to accept said car of onions plaintiff suffered damage and loss on said car of ——."

The chief objection to the findings is that there is no evi- dence in the record to show what the market value of the onions was, and that the correct measure of damage is the difference between the contract price and the market price at the time the onions should have been accepted.

In support of its contention appellant quotes excerpts from Comp. Laws Utah, § 5173, subd. 3, Sedgwick on Damages (8th Ed.) § 755, and Mechem on Sales, vol. 2, § 1650. As these excerpts state the general rule upon which appellant relies, we quote the same at length:

The statute cited, subdivision 3, reads as follows:

"Where there is an available market for the goods in question, the measure of damages is, in/the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

Sedgwick, supra, § 755, reads:

"It is often said that, where the vendor resells the property, the difference between the price obtained at the resale and the contract price is absolutely the measure of damages; or more exactly, the difference between the net proceeds of the resale (the price obtained less the expense) and the contract price. But in other cases it is more properly held that the price obtained at the resale is only evidence of the market value. * * * The question must be determined by all the circumstances. In a case of the sort under discussion, where, after notice, the seller resold the goods at auction, the Court of Appeals of New York said: 'The price obtained after such default, upon a resale, within a reason- able time, although at auction, is evidence of the market value of an article and to be allowed such weight as the circumstances of the sale entitle it to.' And, on the other hand, a resale at private sale, without reasonable notice or efforts to secure the best price possible, and no evidence being offered that the price obtained was

a fair one, does not fix the legal measure of damages."

Mechem, supra, § 1650:

"The seller, in these cases, is not bound to resell, in order to ascertain the value; he may either resell or rely upon other evidence of value, at his option. If he does resell, he must, in order to have the result available as evidence of value, pursue, in substance, the same course as that required of a vendor who sells to enforce his lien; that is, as stated in foregoing sections, he must sell in good faith, within a reasonable time, after notice in the customary manner, and at the place of delivery, or, if there be no market there, then in the nearest and most available market."

Respondent, on the other hand, makes a distinction where the contract of sale is executed by the vendor and title passes to the vendee, as in the instant case. Comp. Laws Utah 1917, §§ 5155, 5157. In such case respondent insists that the true rule is stated in 24 R. C. L. p. 109, wherein it is said:

"Where the sale is executed so as to pass title, and the buyer wrongfully refuses to receive delivery, the seller may resell on account of the buyer, without affecting his right, to damages, which, under ordinary circumstances, will be the difference between the agreed price and the amount received on the resale after deducting the expenses thereof."

On the same page, § 377, the author says:

"Where a contract of sale is executory, and the buyer refuses to accept a proper tender of delivery, it is generally held that the seller may, after proper notice, if such notice be necessary, resell on account of the buyer, for the purpose of fixing the general damages; that is, the difference between the agreed price and the actual market value of the goods at the time of delivery."

The excerpt quoted from Mechem is in connection with the author's discussion of the rule relating to executory contracts of sale where title has not passed. In section 1643, where the same author is speaking of cases where the title has passed, it is said:

"The effect of a resale, properly made—speaking still of the case in which the title has passed, and the seller is reselling the buyer's goods under the power of resale—is that the amount realized upon such resale, less the reasonable expenses of making it, indicates the amount to be credited to the buyer upon the purchase price and determines the balance for which he remains liable to the seller."

On the question of what constitutes a proper resale, Mechem, in section 1634, says the weight of authority is to

the effect that unless the goods are perishable, or, under special circumstances, would render notice impracticable or unavailable, notice of the seller's intention to resell must be given, if he intends to make the price realized on the resale the basis of his recovery against the buyer. In section 1636 the author says no particular form of notice is required. In subsequent sections immediately following it is said that notice of the time and place of sale is not required,        3 though it would be proper and safe to give it. No particular manner or method of the resale is necessary. It may be made at public auction or privately. "In the absence of any instructions from the buyer, the vendor has the right to exercise his discretion within reasonable bounds; and whether this discretion is exercised properly and in good faith are questions of fact for the jury."

In the instant case, immediately on the final refusal of appellant to accept the onions, plaintiff wired the Continental Distributing Company, doing business in the city of Chicago, requesting that firm to wire its best offer and received a reply to the effect that $3.20 per hundredweight was the best offer; that the market was "weak, slow and draggy"; that it was advisable to accept the offer. The wire also stated that, if satisfactory, the company would advise Eck they were selling to account of whom concerned. The evidence also shows that, immediately on receipt of notice of refusal to accept as to each car of onions, plaintiff notified defendant of its intention to sell to the account of whom it might concern, and at or about the same time consigned the onions to the Continental Distributing Company for sale. The evidence also shows that, at the time the sale was made to the defendant, the market for onions in Chicago, and generally throughout the country, was strong and buoyant. There is no doubt that the drop in the market had much to do with appellant's refusal to accept and pay for the onions.

Both appellant and respondent have called the attention of the court to numerous authorities, each claiming that the authorities it cites supports its contention. We have examined the authorities relied on with as much care as circum-

stances would permit, and, while there is an apparent conflict among them, we are, nevertheless, of the opinion that they are to a great extent reconcilable upon the theory that, while the difference between the market value at the time of the breach and the contract price is the correct measure of damages, still the price obtained upon a proper resale of the goods is evidence of the market value, although not conclusive. This conclusion is deducible from the authorities relied on by each of the parties. We cite them here for the benefit of those who may be interested in making further research. In addition to authorities already cited, appellant cites the following: *Kahn* v. *Carl Schoen Silk Corp.* (Md.) 128 A. 359; *Sorrells* v. *Ancona Co.*, 250 Mass. 381, 145 N. E. 564; *Rice Co.* v. *Penn Plate Glass Co.*, 88 Ill. App. 407; *Scott Lumber Co.* v. *Hafner-Lothman Mfg. Co.*, 91 Wis. 667, 65 N. W. 513; *Magnes* v. *Sioux City Nursery & Seed Co.*, 14 Colo. App. 219, 59 P. 879; *Woldert Groc. Co.* v. *Boonville Elevator Co.*, 42 Tex. Civ. App. 524, 94 S. W. 108; *Neuberger* v. *Rountree*, 18 Ill. App. 610; *Brownlee* v. *Bolton*, 44 Mich. 218, 6 N. W. 657; *Con. Flour Mills Co.* v. *Miller* (Mo. App.) 238 S. W. 510; *Rees* v. *R. A. Bowers Co.*, 280 Pa. 474, 124 A. 653; *Texas & La. Lbr. Co.* v. *Rose* (Tex. Civ. App.) 103 S. W. 444. The following are relied on by respondent: *Slaughter* v. *Marlow*, 3 Ariz. 429, 31 P. 547; *Sands* v. *Taylor*, 5 Johns. (N. Y.) 395, 4 Am. Dec. 374; *Van Horn* v. *Rucker*, 33 Mo. 391, 84 Am. Dec. 52; *Gilly* v. *Henry*, 8 Mart. O. S. (La.) 402, 13 Am. Dec. 291; *Waples* v. *Overaker*, 77 Tex. 7, 13 S. W. 527, 19 Am. St. Rep. 727; *Rosenbaum* v. *Weeden*, 59 Va. 785, 98 Am. Dec. 737; *Atwood* v. *Lucas*, 53 Me. 508, 89 Am. Dec. 713; *Penn* v. *Smith*, 93 Ala. 476, 9 So. 609; *Arkansas* v. *Young*, 79 Ark. 603, 96 S. W. 142, 116 Am. St. Rep. 99; *Magnes* v. *Sioux City Nursery*, 14 Colo. App. 219, 59 P. 879; *Sanders* v. *Bond* (Ky.) 66 S. W. 635; *Whitney* v. *Boardman*, 118 Mass. 242; *Northrup* v. *Cook*, 39 Mo. 208; *Edson* v. *Magee*, 43 Pa. Super. Ct. 297; *Hardwick* v. *American Can Co.*, 113 Tenn. 657, 88 S. W. 797; *Gehl* v. *Milwaukee, etc.*, 116 Wis. 263, 93 N. W. 26; *Dill* v. *Mumford*, 19 Ind. App. 609, 49 N. E. 861; *Ingram* v. *Wackernagel*, 83 Iowa, 82, 48

N. W. 998; *Greer* v. *McCrary* (Tenn. Ch. App.) 52 S. W. 1027; *Mendel* v. *Miller,* 126 Ga. 834, 56 S. E. 88, 7 L. R. A. (N. S.) 1184; *McDonald* v. *Mayo* (Miss.) 38 So. 372; *White, etc.,* v. *Crescent Co.,* 254 Ill. 368, 98 N. E. 669, 42 L. R. A. (N. S.) 679.

It is impracticable to review these cases without unduly extending this opinion. As before stated, we are of the opinion they sustain the proposition that a proper resale of the goods is some evidence of the market value thereof. Therefore the only question in this connection is, Was there a proper resale of the onions? We have already shown that when the onions were rejected by appellant, and respondent was informed thereof, it immediately notified appellant that the onions would be resold to the account of whom it might concern. At or about, the same time it wired the Continental Distributing Company, calling attention to the rejected product, and asking for the best offer. That company immediately wired best offer and advised a sale. It also advised respondent that the market was "weak, slow and draggy." Appellant was at the point where the onions were and knew that they were to be resold at appellant's risk. It refused to have anything to do with the onions and stood upon the proposition that they did not conform to the contract in quality, grade, and size. It made no defense at any time, either in its answer or otherwise, that the conduct of the resale was unfair, improvident, or in violation of any rule or custom in situations of that kind. Appellant introduced in evidence the depositions of four witnesses, two from the appellant company. None of them testified as to any unfairness, negligence, or disregard of duty in the conduct of the resale, although they were all engaged in the produce marketing business and were acquainted with the market price. No claim was made that the onions were not sold at the market price prevailing at the time. The evidence shows that onions are exceedingly perishable. It was necessary to sell them as quickly as possible, and there is no contention that this was not done. Under these circumstances, can it be successfully contended that there was no evidence that the onions were sold at their market value?

But while the weight of authority is to the effect that a resale of the product, when made with reasonable care, is some evidence of the market value, it is doubtful, under the statutes of this state, whether it is essential to prove the market value. Comp. Laws Utah 1917, § 5169, authorizes a resale in cases of this kind. It declares that it is not essential to the validity of the resale to give notice of intention to the buyer: neither is it essential to give the original buyer notice of the time and place of sale. As to what constitutes a proper resale, subdivision 5 of the section reads:

"The seller is bound to exercise reasonable care and judgment, in making a resale, and subject to this requirement may make a resale either by public or private sale."

As heretofore shown, in the instant case, notice of intention to resell was given to appellant as to each carload of the onions. The purpose of the notice of intention to resell, and the effect thereof, is clearly stated in the note to *White Walnut Coal Co.* v. *Crescent Coal & M. Co.*, 254 Ill. 368, 98 N. E. 669, as reported in 42 L. R. A. (N. S.) at page 679:

"It has been asserted that notice of intention to resell must be given (*Mendel* v. *Miller*, 126 Ga. 834, 56 S. E. 88, 7 L. R. A. [N. S.] 1184); and that it is the duty of the vendor to notify the purchaser of his intention to resell the goods at the latter's risk (*Rosenbaum* v. *Weeden*, 18 Grat. [Va.] 785, 98 Am. Dec. 737; *American Hide & Leather Co.* v. *Chalkley*, 101 Va. 458, 44 S. E. 705). The theory of these cases is that, if the vendor elects to sell the goods and hold the purchaser liable for the loss, he ought to notify the purchaser that such is his election, in order that the latter may know what the consequence of his continued default may be, thus giving him an opportunity, if he can and so chooses, to avert it by performing his contract and receiving the goods, or at least to endeavor to mitigate his loss by paying some attention to the resale of the goods."

Without deciding, or attempting to decide, the question as to the burden of proof in cases of this nature under ordinary circumstances, the court is of opinion that in the case at bar, the circumstances all considered, the burden was on appellant to show want of reasonable care on the part of respondent in the resale of the onions.

Appellant makes the further point that it offered to pay $2 per hundredweight for the onions, which was more than they

sold for on resale, and that respondent rejected the offer. Upon that point the record shows that, after appellant rejected the onions, it wired respondent that the inspectors in Chicago had inspected the onions and found them below the grade purchased, and in the same telegram offered respondent $2 per hundredweight. The evidence disclosed, however, that appellant had not even applied for inspection and that at the time none had been made. When it was made, as hereinbefore stated, it confirmed the inspection made in Utah at the time the cars were loaded. As the purpose of appellant evidently was to induce respondent, by means of fraudulent representations, to reduce the price of the onions, it comes with ill grace from appellant to criticize respondent for refusing the offer.

We are convinced, under all the circumstances of the case, that the trial court was justified in finding the issues in favor of respondent.

The judgment is therefore affirmed at appellant's cost.

GIDEON, C. J., and FRICK, CHERRY, and STRAUP, JJ., concur.