CHARLES J. SORRELLS & another *vs.* ANCONA COMPANY.

Bristol.   October 28, 1924. — December 2, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Sale*, By sample. *Contract*, Construction, Arbitration. *Damages*, For breach of contract.

A contract of sale by sample of one hundred bales of cotton included a stipulation that the sale was on "New England Revised Terms," which provided for arbitration in a certain method in case of a dispute as to

grade or staple, a right in the vendee to reject all the bales if less than one half were equal to the sample, to reject such as were not equal to the samples if more than one half were so equal, and that the decision of the arbitrators as to grade and staple should be final. The samples by which the sale was made comprised a sample taken from each bale at the place of shipment, both sample and bale being marked for identification. These were submitted to an arbitration committee and were classified by them into several classes, denominated A to D, inclusive. The committee also took samples from the bales at the place of delivery, which they marked for identification, using different marks from those used with regard to the samples which were the basis of the sale. The committee then made its examination and submitted its report from a comparison of the original samples with those taken by it. Their classification of the one hundred samples placed seventeen in grade A, sixty-six in grade B, ten in grade C, and seven in grade D. Their classification of the bales delivered placed three in grade A, forty-six in grade B, twenty-three in grade C, six in grade D, and twenty-two "Not equal to type." The vendee contended that he was not bound by the report because it showed on its face that the committee acted improperly. In an action by the vendor against the vendee upon the contract of sale, there was a verdict for the plaintiff for a part of the amount claimed. On exceptions by the defendant, it was *held*, that

(1) Whether the method adopted by the committee of arbitration was proper, adequate and reasonably accurate was for the committee to determine;

(2) It could not be said as a matter of law that the method adopted by the committee was erroneous;

(3) The following instruction to the jury was correct: that if they were satisfied that the one hundred samples taken from the bales after the defendant refused to receive the cotton fairly represented the cotton that was delivered, it was immaterial if, after it was received by the arbitration committee, it was divided into lots or classes or given certain designations, "because if the cotton corresponded to the sample from which it was purchased, if there were one hundred samples and the one hundred bales corresponded to the one hundred samples, then, the sale being by sample, the bulk corresponded to the sample, the purchaser would be obliged to take it";

(4) It could not be ruled as a matter of law that the committee, in the performance of its duty, under "New England Revised Terms," was bound to compare each original sample with the cotton in the bales from which it was taken;

(5) It could not be ruled that the classification by the committee was invalid.

In an action for breach of an agreement by a vendee to accept and pay for cotton at a fixed price, the correct rule in assessing damages is the difference between the contract price and the fair market price at the time and place agreed upon for performance; and it should not be ruled that if the plaintiff was entitled to recover anything, the most he could recover was the difference between the contract price of the cotton and what it was subsequently sold for by the plaintiff.

CONTRACT for $2,163.92, the purchase price of one hundred bales of cotton alleged to have been sold to the defendant by the plaintiff. Writ dated May 10, 1921.

In the Superior Court, the action was tried before *Walsh,* J. It appeared that the sale of the cotton was by sample, a sample being taken by the vendor from each bale at the place of shipment and delivered to the vendee at the time of the sale. On arrival of the cotton, the vendee rejected it as not being up to sample. The matter then was referred to an arbitration committee under the terms of the "New England Revised Terms," described in the opinion.

The committee's report showed that they first classified the one hundred samples which were the basis of the sale, placing them in four grades denominated A, B, C, and D, respectively. In grade A they placed seventeen samples, in grade B, sixty-six samples, in grade C, ten samples, and in grade D, seven samples. They reported that they found among the bales as delivered three in grade A, forty-six in grade B, twenty-three in grade C, six in grade D, and twenty-two bales that were "Not equal to type."

Other material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings:

"1. Upon all the evidence in the case the jury should find for the defendant.

"2. The cotton was purchased by actual samples which according to grade fell under four classes, respectively, A, B, C, and D. The defendant cannot be held under the contract of sale unless the cotton tendered or delivered is equal to one half or more of the number of bales called for under each class of the samples, and as the classers decided that there were seventeen samples of class A and only three bales tendered or delivered to the defendant equal to these samples, the jury should find for the defendant.

"3. If the plaintiff fails to prove that one half or more of the cotton tendered to the defendant was equal to the samples by which the cotton was purchased with each bale of cotton corresponding to a separate sample, the jury should find for the defendant.

"4. Unless the plaintiff proves that more than one half of the cotton tendered to the defendant was equal to the samples by which it was sold, and said cotton corresponded with said samples so that a tagged bale was equal to a sample tagged with the same number, the jury should find for the defendant.

"5. If the jury find that more than half of the cotton tendered or delivered by the plaintiff to the defendant was equal to the samples in classes B, C and D, then the jury should find that the defendant is liable only for the cotton coming under classes B, C and D, but not for a greater number of bales of cotton in any class than was called for by the number of samples in such class.

"6. The defendant was not bound to receive more than ten bales of cotton equal to class C of the samples.

"7. The sale of cotton was by sample, there was an implied warranty that each bale of cotton from which the sample was taken was of like quality to the sample, and the classers in determining whether the cotton tendered by the plaintiff to the defendant was equal to the samples should have compared the cotton from each bale with the sample drawn from the corresponding bale, and had no authority to classify the cotton as they did, and their classification is invalid.

"8. If the plaintiff is entitled to recover anything, the most he can recover is the difference between the contract price of the cotton and what it was subsequently sold for by the plaintiff."

The rulings were refused.   Material portions of the charge to the jury were as follows:

"The question is, as I understand the arguments of counsel, whether or not the cotton sold corresponded to the sample, which was exhibited or submitted, and from which the sale was made.

"Counsel contends that the samples were taken from the bales together with the original samples, used in making the sale, and submitted to the arbitration committee, which was selected by each party in accordance with the provisions of the New England Revised Terms. . . . If . . . you find in this case that the cotton purchased did not correspond to

the samples from which it was sold — the samples submitted or exhibited and from which the sale was made, — if you are satisfied of that by a fair preponderance of the evidence, your verdict should be for the defendant.

"It appears that the arbitration committee in comparing the samples used when the cotton was sold and the samples taken from the cotton after it was delivered, in comparison of the two sets of samples, they made it up into different grades. If you are satisfied from all the evidence in this case, that the samples taken from the cotton at the time it was delivered, if you are satisfied that the samples taken from these one hundred bales of cotton at the time it was delivered were — or after its receipt had been refused by the Ancona Company, there being some little time after its delivery before arbitration was begun, but if you are satisfied that these one hundred samples which were taken from these bales after the Ancona Company refused to receive the cotton, fairly represented the cotton that was delivered, then it is immaterial if after it was received by the arbitration committee it was divided up into lots or classes or given certain designations, because if the cotton corresponded to the sample from which it was purchased, if there were one hundred samples and the one hundred bales corresponded to the one hundred samples, then the sale being by sample, the bulk corresponded to the sample, the purchaser would be obliged to take it.

"If, however, you are satisfied that the cotton taken from these bales did not correspond to the samples, to the one hundred samples and the one hundred bales did not correspond, then the purchaser is not obliged to take it. If, however, there was a portion of the cotton, which the arbitration committee found corresponded to the samples, — of the individual bales, seventy-eight as I believe in number, — then the defendant would be required under the terms — under the New England Terms to take that portion if it was over a half which corresponded to the sample."

There were no exceptions to the charge or to any portion of it. There was a verdict for the plaintiff in the sum of $1,248.63. The defendant alleged exceptions.

The brief of the defendant before this court contained the following:

"As the provisions of the New England Terms make the decision of the arbitrators final, the parties to the arbitration are bound by such decision, unless some misconduct of the arbitrators is shown. In this case the misconduct appears on the face of their report.

"It seems obvious that in order to determine whether the cotton tendered was equal to the samples, that the arbitrators should compare the cotton with the samples, and whenever they found a bale of cotton not equal to the original sample supposed to have been drawn from that bale, the bale should be rejected.

"In order to examine the cotton tendered and determine whether such cotton corresponded with the samples, the arbitrators should have before them the original samples numbered, and samples drawn from the bales at Fall River, with the shipping numbers corresponding with the numbers on the original samples; but the shipping numbers of the bales were not sent with the samples taken from the bales, but instead a mill number was substituted which was placed on the bales after they arrived at Fall River. . . .

"It appears therefore that the numbers on the re-drawn samples were not the shipping numbers on the bales, and did not correspond with the numbers on the original samples, and that the arbitrators could not compare an original sample with the bale from which it was drawn. It was under these conditions that the arbitrators made four classes or types of the original samples, compared the re-drawn samples with these types, and in their report show that they classified the cotton by the mill number which was given to the re-drawn samples, and not by the shipping number, the number on the original samples. This classification was made in disregard of the defendant's rights to have the sample compared with the bale from which it was drawn."

*J. B. Cummings*, for the defendant.

*D. R. Radovsky*, (*H. W. Radovsky* with him,) for the plaintiff.

CROSBY, J. This is an action of contract to recover for one hundred bales of cotton at twelve cents per pound. The

contract was made by a letter written by the plaintiffs to the defendant and accepted by the latter.   The letter is as follows:

" THIS CONFIRMATION IS CONSIDERED AN ACCEPTANCE
UNLESS ADVISED BY WIRE TO CONTRARY.

Order No.

Sorrells & Co.
        66 Beaver St.,
                        Fall River, Mass., January 15, 1921.
    The Ancona Company,
        Fall River, Mass.
    Dear Sirs:
    We hereby confirm sale to you this day of 100 bales of cotton.   Grading: As per actual samples submitted marked Corn at 12c. per pound.   Cost and Freight Landed.
Destination Watuppa, Mass.
Notify.
Shipment.   Immediate from Arkansas.
Reimbursement: Payment on arrival.
Remarks: New England Revised Terms.

Yours truly,
                        Sorrells & Co.
                (Signed)    Per Charles F. Brady, Atty.
    Accepted.
                (Signed)   George D. Flynn, Treas."

Under an ordinary contract of sale by sample, the plaintiffs to recover must show that the goods in bulk to be delivered correspond with the sample exhibited.   *Borden* v. *Fine*, 212 Mass. 425.   Williston on Sales, § 255.

The cotton was shipped from Arkansas to the defendant, who rejected it on the ground that it was not like the samples in grade.   In the contract, following the heading " Remarks " are the words " New England Revised Terms." After the goods were rejected the parties submitted the matter to arbitration in accordance with the " New England Revised Terms "; those terms, so far as they relate to arbitration, are printed in the bill of exceptions.   In part they are as follows:

" 5  (Both) Whenever a specific lot of cotton purchased by

actual samples does not equal the samples, the purchaser shall have the right to reject the lot if less than one-half is equal to the samples. If one-half or more is equal to the samples, the purchaser may reject the portion not equal to the samples, but in either event samples of the entire mark must be exhibited to the seller. The cost and actual expenses of handling the rejections shall be paid by the seller, and in case of rejection the seller shall not be called upon to replace. Interest may be charged from the date of payment for the cotton, to the date of reimbursement for the rejected cotton."

" 9. (Both) The New England Cotton Buyers' Association, The Southern Cotton Shippers' Association, and the Arkwright Club, shall each select one classer, these three to act in each case, to class or staple all cotton submitted to them for arbitration. In case of the sickness or absence of any one of them, the party selecting him may provide a temporary substitute."

" 11. (Both) Certificates of the decision of the classers shall be signed by all three of them if possible, but the decision of any two shall govern. The decision shall be final in every case without any appeal."

" 19. Any dispute between purchaser and seller as to whether a shipment conforms to the terms of a sale (except as to actual grade or staple, with regard to which the decision of the classers is final) the amount of any allowance, or the interpretation of any section of these terms, shall be referred to the Board of Appeal upon the request of either party in interest. The decision of the Board of Appeal shall be final. No person interested in the matter involved shall serve as a member of the Board of Appeal."

There was evidence that the original one hundred samples from which the defendant purchased the cotton were submitted to the arbitration committee; that each sample represented a bale; that these samples were tagged and numbered and that the tag number bore the same number as the bale from which it was taken; that in this way the samples could be identified with the bales: in other words, if a sample were drawn from bale number 1, the sample would contain

a tag number on the bale as "1," and so on up to one hundred or whatever the number of bales might be; that each bale was numbered when shipped to the defendant from the south; that in addition to submitting to the committee these original one hundred samples, there was taken for the use of the committee a sample from each bale, and as it was drawn from the bale a card was put on the sample so redrawn that represented the bale from which it was taken; that this card was part of a tag and the other part bearing the same number was put in the bale from which the sample was drawn; that there were two numbers on each bale, one the shipping number, the other the mill number; that the number put on the redrawn sample was the mill number and was put on by the defendant when the cotton arrived; and that the numbers taken for the samples redrawn were not the numbers that were on the cotton when it was shipped.

The above described method of drawing the samples for use by the arbitration committee and for comparison with the original samples was testified to by one Moran, a witness called by the plaintiffs, who took the samples from the bales. The committee made its examination and submitted its report from a comparison of the original samples with those drawn from the bales by Moran.

In its report the committee found that twenty-two bales were not equal to sample and that seventy-eight bales were equal thereto. As one of the steps in coming to this conclusion the committee subdivided the samples into four classes — A, B, C, and D. It is conceded by the defendant that, under the provisions for arbitration, if more than fifty per cent of the cotton tendered was equal to the samples upon which it was sold, the purchaser was obliged to take the cotton found to be equal to the samples unless it appears that the arbitrators acted wrongfully in the performance of their duties. The defendant contends that it is not bound by the arbitration because the report on its face shows that the committee acted improperly.

It may be presumed that the arbitrators were selected because of their expert knowledge and experience in comparing samples of cotton with that in bales for the purpose of de-

termining whether it was equal to the sample. Whether the method they adopted of dividing the whole shipment into classes and comparing the original samples with those which had been redrawn from the bales after rejection by the defendant was a proper, adequate and reasonably accurate method of determining whether as a whole the cotton was equal to the original samples was for them to determine, and we cannot say as matter of law that it was erroneous. *Palmer* v. *Clark*, 106 Mass. 373. *Marsch* v. *Southern New England Railroad*, 230 Mass. 483, 493, 494.

The trial judge instructed the jury that if they found that the cotton purchased did not correspond with the samples from which it was sold, then their verdict should be for the defendant; but if they were satisfied that the one hundred samples taken from the bales after the defendant refused to receive the cotton fairly represented the cotton that was delivered, it was immaterial if, after it was received by the arbitration committee, it was divided into lots or classes or given certain designations, "because if the cotton corresponded to the sample from which it was purchased, if there were one hundred samples and the one hundred bales corresponded to the one hundred samples, then the sale being by sample, the bulk corresponded to the sample, the purchaser would be obliged to take it."

The instructions so given were correct, and as it could not be ruled as matter of law that the committee, in the performance of its duty, under "New England Revised Terms," was bound to compare each original sample with the cotton in the bales from which it was taken, the defendant's requests, except so far as covered by the instructions given, were rightly refused.

The defendant's eighth request could not properly have been given; the correct rule in assessing damages in a case of this kind is the difference between the contract price and the fair market price at the time and place agreed upon for performance. *Barrie* v. *Quinby*, 206 Mass. 259. *Edelstone* v. *Schimmel*, 233 Mass. 45.

*Exceptions overruled.*