DAVID B. MORSE *vs.* HARRY ANDLER.

Suffolk. November 3, 1953. — December 9, 1953.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Sale*, By sample.

Evidence of the condition of a lot of phonograph records at the time they were packed and shipped pursuant to a contract of sale by sample and of the condition of some of the records upon examination following complaints by the buyer after delivery to him, together with a record introduced in evidence and testified by the seller to be the same in all essential particulars as the samples furnished to the buyer at the time of making the contract, which were not in evidence, warranted a finding that the records as delivered conformed to the samples so furnished and justified recovery by the seller of the contract price of the records from the buyer.

CONTRACT. Writ in the Municipal Court of the City of Boston dated April 14, 1952.

Upon removal to the Superior Court, the action was heard by *Donahue, J.*

*Paul J. Miller,* (*Edward Miller & Samuel Miller* with him,) for the defendant.

*Bernard P. Rome,* for the plaintiff.

WILLIAMS, J. This is an action of contract for goods

sold and delivered by the plaintiff to the defendant in accordance with the following written order:

"ANDLER'S
95 Summer Street

Boston 10, Mass. March 31, 1952

Bought of: David B. Morse
203 Broadway,
Chelsea, Mass.

Quan.

5000 Horse race records (same as sample) complete 5000 lot.
with sleeves and score cards $1650.00
These records guaranteed against
breakage 5000 count guaranteed
by Morse. Morse guarantees that
we have these records exclusively.

delivery pd by us 15.00

$1665.00
Part payment on delivery balance
in 10 days to 2 weeks"

The defendant's answer was a general denial with allegations that "the merchandise or records shipped were not 'as per sample'"; that "considerable numbers of the merchandise" were broken; that "substantially all of the records" were defective and warped; that "almost all of the merchandise and records" were "unsaleable"; that the defendant rescinded the sale and offered to return the goods to the plaintiff; and that the plaintiff committed "breaches of warranties." A judge of the Superior Court sitting without jury found for the plaintiff in the amount set forth in the declaration. Of the defendant's exceptions the only one argued is to the denial of the defendant's motion for a "directed finding" in his favor.

There was evidence that the plaintiff was a jobber of general merchandise and had obtained the records in question in sealed up cartons from one Stone. The records were a novelty production designed for use at social gatherings

and purported to describe a horse race in which, as we understand, the winning horse depended on the portion of the record which was played. The plaintiff played a few of the records on a record player for the defendant who "thought that the record was a very good idea" and was given three or four sample records which had been taken at random by the plaintiff from the lot. Some days later the defendant gave to the plaintiff the order quoted in the declaration and instructed him to have the records shipped to a place in Randolph. It was agreed that $500 was to be paid on receipt of the records and the balance in ten days to two weeks. The plaintiff proceeded to have the records counted, checked, and packed, and participated himself in the process. All broken and cracked records were eliminated from the shipment and the five thousand records were shipped to a designated warehouse in Randolph. The plaintiff agreed that the defendant might inspect the records. A few days later the defendant complained that the wrappers were wrinkled or damaged and arrangement was made that the parties should meet at Randolph the following day to examine the records. The defendant did not appear but the plaintiff and Stone examined the cards and folders that had been complained of and found nothing wrong with them, and that they were in good condition. An appointment was made for the next day in Boston at which time the defendant said that he could not use the merchandise as the records were broken, damaged, and unplayable; that they were off pitch (not straight) and were not as the samples submitted. The plaintiff protested that he had tested the records and found them satisfactory. The parties then agreed to go out again and examine the records. The plaintiff and his attorney met the defendant with his attorney in Randolph about the middle of April. Several cases of records were opened and no records were found damaged, broken, or off pitch. The plaintiff reiterated his written guarantee to replace broken records but none was shown to him. On cross-examination the plaintiff testified that he did not personally look over the five thousand records before ship-

ment to determine whether the records were in accordance with the sample, and that none of the persons who assisted the plaintiff in shipping the records had the original sample to compare with the records that were shipped. In answer to a question in redirect examination, "did the records as you examined them at the time of packing and shipment correspond with the samples which you had shown earlier to Mr. Andler?" the "plaintiff answered that as far as he knew, they did." The defendant rested his case at the close of the plaintiff's evidence and presented the said motion which was denied. No one of the samples which had been given to the defendant was offered in evidence. The plaintiff, however, testified that a record which was introduced in evidence and the other parts, namely, the cards and descriptive material, were similar to the samples which the plaintiff left with the defendant. The question of law presented by the defendant's motion which he seeks to have decided is whether the evidence of the plaintiff was sufficient to warrant a finding that the goods delivered by the plaintiff corresponded with the samples given to the defendant.

The transaction between the parties was a contract of sale by sample followed by a delivery of certain goods. Recovery by the plaintiff of the contract price of the goods depended on proof by him that the bulk of the goods delivered conformed to the samples exhibited to the defendant at the time of the contract. *Atwater* v. *Clancy,* 107 Mass. 369. *Borden* v. *Fine,* 212 Mass. 425. *Sorrells* v. *Ancona Co.* 250 Mass. 381, 387. Williston on Sales (Rev. ed.) § 255. The defects in the goods delivered of which the defendant complained were that the wrappers or folders were wrinkled or damaged and that the records were broken, cracked; and warped. The plaintiff testified that he participated in the shipment of the goods and that all cracked and broken records were eliminated. After delivery he examined the records in the Randolph warehouse and found the folders to be in good condition. Thereafter several cases were opened in the presence of the defendant and none of the

records was found to be broken, warped, or damaged. The bill of exceptions does not disclose the number of cases in the shipment, but it was for the judge to determine whether the number of records examined was sufficient to furnish a basis for an inference as to the condition of the entire lot. *Distribuidora Del Pacifico, S. A.* v. *Gonzalez,* 88 Fed. Sup. 538. *Alpirn* v. *Williams Steel & Supply Co.* 199 Fed. (2d) 734, 738. See *Sorrells* v. *Ancona Co.* 250 Mass. 381, 390.

The judge could find that the records were in good condition when delivered. As no contention was made that the records when played would not reproduce the description of the horse race as satisfactorily as did the samples, it was not necessary, as argued by the defendant, that the samples be physically produced for comparison. The judge was warranted in finding that the record offered in evidence by the plaintiff was, as testified by him, similar to the samples and that he used the word similar as denoting sameness in all essential particulars. *Commonwealth* v. *Fontain,* 127 Mass. 452, 454. In the absence of objection to the admission of this record it was reasonably to be inferred that it was one of the lot obtained from Stone from which the shipment had been made, and was a fair specimen of the records delivered. There was no error of law in denying the defendant's motion.

*Exceptions overruled.*